FLORENCE SUBLETT v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Appellant.—294 S. W. 718.

Court en Banc, April 8, 1927.

1. **NEGLIGENCE: Section-Hand Rule: Right to Clear Track: Express Handler: Humanitarian Rule.** The section-hand rule cannot as a matter of law be applied to an employee of an express company who, in carrying

a box across a walkway over defendant railroad company's tracks, was struck by a backing car, where a hundred express handlers in a single morning usually walked upon such cross walkway and defendant's trainmen recognized that it was their duty to watch out for persons on the walkway. So that where there were thirty-two parallel north-and-south tracks under the shed, each pair being close together, and the wide walkway extended from the west eastward across eight tracks, and deceased walked east along the walkway for the purpose of putting in an express car which stood on the sixth track a box of celery, which he carried on his shoulder and which obstructed his view to the south, and, instead of passing around the south end of the car, upon the walkway, to the open door on the east side, knocked upon the closed door on the west side, and was struck by a car being backed northward on the fifth track, and suit for his death is based upon the humanitarian rule, it cannot be ruled as a matter of law, notwithstanding his contributory negligence, that the trainmen, knowing it was their duty to look out for persons on the walkway, were under no obligation to use ordinary care to discover his peril and obliviousness to danger in time to have avoided striking him, but such question is one for the jury.

2. ———: **Humanitarian Rule: Application.** Where the drag train was traveling three miles an hour, could have been stopped in fifteen feet, and traveled forty feet after the express handler standing on the track could plainly have been seen by the engineer, and if seen would have been seen to be oblivious to his danger and his view obstructed, and there is positive testimony that the trainmen understood it to be their duty to watch out for persons on that part of the track where he was standing, or to see that timely signals were given to the engineer to slow up, the humanitarian rule applies.

Corpus Juris-Cyc. References: **Railroads,** 33 Cyc., p. 856, n. 73; p. 906, n. 53 New; p. 907, n. 60.

Appeal from Circuit Court of City of St. Louis,—*Hon. H. A. Rosskopf,* Judge.

AFFIRMED.

*J. L. Howell* and *R. C. Beckett* for appellant.

(1) None of the defendant's employees saw Sublett in a position of peril, and as they were then situated none of them could have seen him, in the exercise of ordinary care, in time to have prevented the accident. The humanitarian doctrine deals only with the actual facts of a present situation, and has no concern with the question of what might have been done under different conditions. Grout v. Ry. Co., 125 Mo. App. 552; Henson v. Ry. Co., 301 Mo. 415; Griffin v. Transfer Co., 193 S. W. 810; McGee v Railroad Co., 214 Mo. 530. (2) As to section hands and other employees engaged in working about the tracks, the defendant had a right to expect a clear track and to rely upon the presumption of a clear track, and that these workmen must and would take care of themselves, and the defendant,

therefore, was under no duty to be on the lookout for such persons. Rashall v. Railway Co., 249 Mo. 509; Lusk v. Ellison, 271 Mo. 468; Gabal v. Railroad Co., 251 Mo. 257; Woods v. Railroad Co., 187 S. W. 12; Van Dyke v. Railroad Co., 230 Mo. 282; Degonia v. Railroad, 224 Mo. 587; Kirkland v. Bixby, 282 Mo. 462; Hunt v. Railroad, 303 Mo. 107; Brockschmidt v. Ry. Co., 205 Mo. 435; Bruce v. Railroad Co., 271 Mo. 762; Nivert v. Railroad Co., 232 Mo. 626; Clancy v. Railroad Co., 192 Mo. 615; Taylor v. Railroad Co., 86 Mo. 457. (3) The foregoing rule is exactly the same with reference to other employees whose duties require them to work on or around tracks or to cross tracks. Rashall v. Ry. Co., 249 Mo. 468; Bruce v. Railroad Co., 271 Mo. 762; Taylor v. Railroad Co., 86 Mo. 457. (4) The rule is exactly the same with reference to workmen not employed by the defendant whose duties require them to work on or around railroad tracks, or to cross such tracks in railroad yards or terminal stations. Bruce v. Railroad Co., 271 Mo. 762; Brockschmidt v. Ry. Co., 205 Mo. 435; Van Dyke v. Railroad Co., 230 Mo. 282; Clancy v. Railroad Co., 192 Mo. 615; Taylor v. Railroad Co., 86 Mo. 457.

*W. H. Douglass* for respondent.

(1) The defendant is in no position to complain of the action of the court in submitting this case to the jury on the theory that by the exercise of ordinary care, its employees could have seen plaintiff in a position of danger in time to have stopped the cars or checked their speed or given timely and adequate warning to decedent of the approach of said cars, for the reason that the defendant in its instruction used this identical language and, therefore, it joined with plaintiff in submitting this issue, and it cannot complain of error which it invited. Lange v. Mo. Pac. Ry. Co., 208 Mo. 475; Simpson v. Wells, 292 Mo. 229; Phillips v. Railway Co., 226 S. W. 886, a case just like this; Kame v. Railroad, 254 Mo. 196; Taylor & Son Brick Co. v. Railroad, 213 Mo. 729; Hiltz v. Railroad, 101 Mo. 36; Gordon v. Park, 219 Mo. 611; Black v. Railroad, 172 Mo. 187; Olfermann v. Railroad, 125 Mo. 415; Heigold v. Railroad, 271 S. W. 776. (2) The facts in this case distinguish it from the cases cited by respondent with reference to the duty of trackmen, section-hands and switchmen working in a yard, and bring it within the rule laid down in the following cases where persons are to be expected at a particular point on the track. State ex rel. v. Trimble, 304 Mo. 533; Aleckson v. Railroad, 213 S. W. 894; Jetter v. Railroad, 193 S. W. 956; Walker v. Railroad, 193 Mo. App. 249; Brimier v. Railroad, 211 Mo. App. 47; 3 Elliott on Railroads, 899 and 900, secs. 1808-1809; Hubbard v. Railroad, 193 S. W. 579. (3) This case was before this court on a former appeal where the evidence was the same as in this case,

and the questions raised by appellant were passed on in that opinion, and are not open for review.   Sublett v. Railroad, 267 S. W. 622; Trust Co. v. Bagley, 275 Mo. 540; Railroad v. Bridge Co., 215 Mo. 286; Railroad v. Surety Co., 291 Mo. 92, 108; Tetweiler v. Railroad, 242 Mo. 178.

WHITE, J.—The plaintiff obtained judgment in the Circuit Court of the City of Saint Louis at the October term, 1921, for $10,000 damages on account of the death of her husband, alleged to have been due to the negligence of the appellant.   This is the second appeal of this case.   The first judgment was reversed.   [Sublett v. Terminal Company, 267 S. W. 622.]   The second trial resulted in a verdict for plaintiff, followed by this appeal.   The case on the present appeal has been argued once in Division One of this court, and twice in Court en Banc.   It comes to me on reassignment after the second argument, because of the expiration of the term of the judge to whom it was originally assigned.

Lindsay Sublett, husband of the plaintiff was an employee of the American Express Company.   His duties were to load express matter on cars which stood on defendant's tracks under the shed of the Union Station at St. Louis.   While in the performance of those duties he was killed September 17, 1920.

The shed of Union Station was about six hundred feet long from north to south.   Thirty-two railroad tracks run into that shed from the south.   These railroad tracks were arranged in pairs numbered from the west.   One and two constituted a pair, three and four a pair, and so on.   Between the pairs of tracks were platforms about 15 feet wide extending the length of the shed from north to south.   Between the inner rails of each pair of tracks was a space about 7 1/3 feet wide.

The loading of cars was generally done from platforms between the pairs of tracks.   Sublett was killed while standing between tracks five and six, which were a pair.   The express matter, loaded, on to the cars, was taken from the west side of the shed and carried across the several tracks to the car for which it was intended.   A cross walk extended from the west across tracks 1, 2, 3, 4, 5, 6, 7, and 8.   This cross walk, sometimes called the old mail-truck way, was 46 feet wide.   Mail and express matter were carried by truck and otherwise on this cross walk as far as track 9.

On the morning mentioned, about 8:30, Sublett carried a box of celery on his shoulder from the west along this old truck way to a baggage car standing on track six.   This car extended about half its length from the north on to the truck way, leaving sufficient room at the south ends for trucks or persons to pass around.   The proper method for the plaintiff was to pass around the end and approach

the car door on the east side where he could hand in his box of celery. Instead of that he came up to a door of the car on the west side, standing between tracks five and six, and knocked on the door of the car to attract the attention of the man on the inside of the car. While in that position, two cars pushed by an engine from the south came in on track 5, across the old truck way. Sublett was standing about two feet from the north side of the truck way, with the box of celery on his right shoulder. It was described as weighing about 15 pounds, and as being about 14 by 20 inches in dimension. It seems it was such as to obscure his view to the right from which the car came. He was struck and killed. The facts are much more fully set out in the case at the former hearing of Sublett v. Terminal Railroad Assn., 267 S. W. 622.

The defendant demurred to the evidence at the close of the case and error is assigned to the overruling of that demurrer. Further error is assigned also to the giving of an instuction. The case was submitted to the jury on the humanitarian doctrine. At the former hearing of the case this court held that the evidence was sufficient to submit the issues to the jury on that theory.

I. The defendant first complains of an instruction authorizing a recovery, not only if the operators of the train *saw* Sublett in a position of peril in time to have prevented injury which caused his death, but if, by the exercise of ordinary care, such employees 'could have seen the deceased in a place of danger, if so, of

Section-Hand Rule. being struck by the cars in time by the exercise of ordinary care to have stopped the cars or checked their speed or give deceased timely warning of the approach of the said car and thereby avoided any injury to the deceased, yet failed and neglected to do so,'' etc.

It is argued that the section-hand rule should apply; that it was the duty of Sublett, in the employment in which he was engaged, to look out for himself, knowing that trains were always entering on those tracks and therefore the operatives of the trains had a right to expect a clear track. Appellant cites Bruce v. Missouri Pacific Railroad, 271 S. W. 762, as authority for that construction upon this very situation. In that case, however, the accident occurred outside the shed among the railroad tracks, where no passway was provided. Here there was a broad cross walk for the use of persons operating trucks and loading express matter on the cars. It was said that as many as a hundred persons crossed the tracks on that walk in one morning, although only two or three persons would be passing at one time. From the evidence, the employees of the defendant appeared to recognize their duty to look out for persons crossing the tracks on that cross walk. It didn't extend across all the tracks in

the yard, but only across eight of the tracks; for that limited space the employees operating the train in this particular case indicated that it was their duty to watch out for persons crossing.

Mr. Perry, Passenger Trainmaster, witness for the defendant, testified when asked what warnings were given for the movement of drags of cars and switch movements coming under the shed, that warnings were given by an air whistle for tracks 1, 2, 3 and 4. Warnings for other tracks were given by someone located on the platform who would "holler, 'Look Out!' which is a common practice when trucks or men are located on the runway." The two cars which were pushed into the shed, causing the injury, were called a "cut" or "drag."

Fred Meyers, whose occupation was switching passenger cars, was in the front car of the drag and explained how he watched for persons on the walkway. There was a door in the north end of the car. He said freight was piled up against that door so that he could not get to it, otherwise he would have been in that door watching. As it was he went to the east door of the car and looked down to the north to see if anyone was in danger. He did not see anyone and went back to the west door, apparently relying upon other operators to warn persons who might be in the way. The construction of this broad walkway, the use to which it was put, and this testimony of these witnesses for the defendant, all indicate that it was the understanding of the operatives that they were not to expect a clear track when pushing cars in, but were under duty to have a care.

It is argued that the platforms between the pairs of tracks were the proper places upon which to load express matter; they were constituted for that purpose, and there was no necessity for any man to go between two tracks constituting a pair, as Sublett did on that occasion. All this, of course, would go to the contributory negligence of Sublett. Whether or not it would relieve the operatives of the drag from care in looking out for persons in such position is another question.

We are asked to say, as a matter of law, that under the circumstances here the section-hand rule would apply. As we view it, in this case it is a question of fact. Sublett was not an employee of the defendant; he was not injured among the tracks where no one but employees or persons closely related to the work of the railroad were expected to be. He was using a broad walk where trucks passed to and fro every day and where a hundred persons had passed that morning; where men carrying packages, such as Sublett had on his shoulder, might be expected any time. So we think it was for the jury to find the facts to show whether the situation was such that defendant's employees had a right to expect a clear track. The plaintiff's instruction submitted that issue to the jury, who were required

to find:   . . .   "that on said date there was a cross walk under the shed, between about tracks four and nine, that was used by deceased and other employees at work under the shed in going back and forth across the tracks, if so, in their work; that said cross walk was in such constant and frequent use by employees at work under the shed that in backing cars over the cross walk the defendant and its employees should have anticipated that employees at work under the shed were apt to be on said cross walk, in a place of danger, if so, of being struck by the cars;   . . . "

The defendant did not ask any more definite instruction so as to require a finding in greater particularity of the facts which would make the place one where the defendant's employees had  no right to expect a clear track.  It failed to ask any instruction on the subject.  Therefore, we think that the submission under the humanitarian rule was not error.

II.  But it is claimed that the defendant failed to  make out a

**Humanitarian Rule.**  case under the humanitarian rule, and therefore the demurrer to the evidence should have been sustained.

The evidence of the several witnesses shows that the drag which backed into the shed was moving at a rate of from three to six miles per hour.  It was stopped in fifteen feet after it struck Sublett.  It dragged him that distance.  He was found about thirteen feet north of the north edge of the walk, after the drag was stopped.  The drag could have been stopped in fifteen feet at any time.

Sublett came up to the door of the baggage car, and according to nearly all the testimony, was standing on the cross walk or truck way about two feet from the north edge.  There he knocked on the door of the baggage car to attract the attention of Robert Grier, an employee of the American Railway Express Company, who was in the car.  His business was to receive the package.  He was sitting on the east side of the car.  Hearing the knock he got up and went across the car to see what it was about.  He saw Sublett standing there with the crate of celery on his shoulder.  Grier then tried to open the door, but found express matter piled against it so that he could not open it.  Then he saw the drag coming in from the south side, about 40 feet south of where Sublett stood.  It apparently had begun to stop and then moved on.  The witness "hollered" to Sublett, and tried to tell him the train was coming, but Sublett did not seem to understand.  Then the witness knocked on the glass and motioned to him.  Sublett then stepped backwards and the car hit the celery box on his shoulder and he was knocked sideways.  He fell across the east rail and the car ran over his legs.

The distance between two cars standing on a pair of tracks was said by one witness to be 3½ or 4 feet; he never measured it.  That would

depend upon the overhang of the cars. The rails were a little over seven feet apart. It might have been considerably less than 3½ feet, but it is said there was room to walk between two cars standing side by side on a pair of tracks. Standing as Sublett stood, knocking on the door of the car, the crate of celery on his shoulder, it seems there was not room for a car to pass without striking him. At least that was a question of fact for the jury. So, from the time he came up and knocked on the door of the baggage car he was in a position of peril. That he was oblivious of his peril is apparent from the fact that the celery box on his right shoulder shut off his view, and he was inattentive even if he could see to the south. He must have been in that position several seconds while the car moved forty feet, and in that distance the drag could have been stopped twice. Even if it had been stopped within a few feet after he was struck he probably would not have been injured. He was knocked to the east. The distance of the wheels from the end of the car is not given. From the place where he could easily have been seen the drag must have traveled 45 or 50 feet before the injury actually occurred. The engineer all the time was sitting on the right hand side of the engine, and Sublett was in plain view.

Alton D. Harvey, whose deposition was offered by the plaintiff, testified that his business was to relay signals. He was on the drag as it entered the shed. He got off and walked along beside the car on the west side and relayed signals to the fireman who repeated them to the engineer on the other side. He stated that he signaled the fireman to ease up before the north end of the drag got to the truck way; again, after the injury occurred he signaled to stop. If the fireman could see his signals then the engineer, on the other side, undoubtedly could see the position of Sublett all the time.

Fred Meyers, whose business at the time was switching passenger cars for the Terminal Company was in the north car of the drag as it came into the shed. He said that as the car moved north and was about a car-length south of the crossing, meaning the truck way, he walked over to the east door to see if the track was clear. At the first trial he testified that the front car of the drag slowed up right at the south side of the truck way, and he looked to see if the way was clear to the north.

There is sufficient evidence from which the jury might well find that the drag was moving about 7½ feet per second. If he was a car-length from the platform he was possibly 80 or 90 feet from where Sublett stood. Take into consideration the length of time Sublett would be employed in knocking on the door, attracting the attention of Grier inside; for Grier to go across the car and try the door, and after that look south and see the drag about 40 feet distant. It must have been at least long enough for the car to travel 40 or 50 feet

316 Mo.—69.

.from the point where Meyers said he looked. So it is reasonable to infer that if he had looked, he could have seen Sublett at the place where he stood.

The appellant makes the point that Albert J. Orr, witness for the plaintiff, came along the truck way and crossed the track just ahead of the drag. Orr was asked if he saw any person standing around there or near the walk way. His answer was that he could not say that he did. He saw the drag coming at about six miles an hour. He kept his eye on it until he got clear; that is, until he got across tracks 5 and 6 and stopped on track 7. He saw nothing of Sublett until after he heard the commotion. He was anxious to cross ahead of the drag and his attention was directed entirely to that. His testimony is not conclusive that Sublett was not at the door of the express car at the time he crossed over. The evidence is entirely sufficient from which the jury could find that Sublett was in a position of peril long enough before he was struck so that the operatives of the drag, by using ordinary care, could have seen him in time to avoid the injury.

It is not contended that any sort of warning was given which would have availed Sublett so that he might have avoided the injury. It was stated that bells were rung on engines. There was testimony that many bells were ringing all the time; there was much confusion of bells through the shed, so that the sounding of bells was very inadequate warning to anyone in the position of Sublett.

The engineer should have been looking forward, although the fireman relayed signals to him. Those signals, the fireman testified, were given by mouth or by sign. Since they were sitting close together there is nothing to indicate that in receiving signals from the fireman the engineer's attention was drawn from the front.

The judgment is affirmed. All concur, except *Gantt, J.,* not sitting.