MICHAEL PETROVIC AND MILDRED PETROVIC, RESPONDENTS, v. STANDARD FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, A CORPORATION, APPELLANT.—167 S. W. (2d) 412.

Kansas City Court of Appeals.   January 11, 1943.

*Burrus & Burrus* and *Johnson & Garnett* for respondents.

*Hogsett, Trippe, Depping & Houts* for appellant.

SHAIN, P. J.—This is a suit on a fire insurance policy issued to Michael and Mildred Petrovic, plaintiffs herein, by Standard Fire Insurance Company of Hartford, Connecticut, a corporation, and defendant herein.

No question of the issuance of the policy, of the fact of the loss by fire, nor as to the policy being in full force and effect at the time of loss are involved, and no question of notice or proof of loss is raised.

The controversy herein principally arises upon a dispute as to whether or not the loss was partial or total.

What is known as the valued policy law of this State is involved herein.

Under the provisions of this law, Section 5930, Article 6, Chapter 37, Revised Statutes Missouri, 1939, when a total loss occurs the damage is the amount of the face of the policy, less depreciation in value after insurance attaches.

The fire insurance policy herein involved secured property of plaintiffs in the sum of $2225.

Plaintiffs' petition herein has allegations as follows:

"3. That on or about the 26th day of March, 1938, said dwelling house was totally destroyed by fire; that plaintiffs have duly performed all of the conditions required of them by the terms of said policy; and in due time and form these plaintiffs gave notice of said loss, and defendant paid on account thereof the sum of $1,561.56 on or about the 27th day of June, 1938, leaving a balance due of $663.44. Plaintiffs further state that they have demanded of and

from the defendant the payment of the said balance but the defendant has failed and refused to so pay them.

"4. Plaintiffs further allege and state that said refusal of defendant to pay the amount due under said policy was and is vexatious and without reasonable cause and plaintiffs are entitled, on account of said vexatious refusal to pay, to damages in the sum of Sixty-six Dollars ($66) and a reasonable Attorney's fee in the sum of $250.

"5. Wherefore, plaintiffs pray judgment against the defendant in the sum of Six Hundred sixty three Dollars and forty-four cents (663.44) on account of said loss, and for the sum of $66 on account of the defendant's vexatious refusal to pay, and an attorney's fee of $250 and costs herein."

The defendant, in a verified answer, specifically denied that there was a total loss and alleges full acquittance by payment of the $1561.56, alleged as paid in plaintiffs' petition, and makes denial of any other liability.

Further pleading, defendant quotes and urges provisions of the policy of insurance as follows:

"'This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company or, if they differ, then by appraisers, as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of the policy.

"'In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss; stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expense of the appraisal and umpire.

"'This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satis-

factory proof of loss herein required have been received by this company, including an award by appraisers when appraisal has been required.'

"Further answering, defendant alleges that following the loss in question there was a disagreement and difference between plaintiffs on the one hand and defendant on the other as to the amount of loss and damage sustained. Plaintiffs and defendant then and there agreed in writing to submit the matter of the loss and damage sustained to appraisers and said agreement for submission to appraisers entered into between plaintiffs and defendant was as follows:"

Defendant's answer further sets forth contract between the parties, submitting question of amount of loss to appraisers. The fourth and fifth paragraphs of this contract read as follows:

"Whereas, a disagreement has arisen between the said Michael Petrovic on the one hand and said insurance companies on the other as to the amount of loss and damage sustained as the result of said fire, and

"Whereas, the parties hereto desire that said loss and damage shall be appraised by competent and disinterested appraisers in accordance with the terms and provisions of said policies of insurance and"

Thereafter there is shown appointment of Orville Campbell by plaintiffs and B. E. Baer by defendant as appraiser. The appraisal agreement closes with paragraph as follows:

"It is expressly understood and agreed that this agreement and appraisement is for the purpose only of ascertaining and fixing the amount of sound value and loss and damage to the property and shall not determine, waive or invalidate any of the right or rights of either party to the contract of insurance."

The aforesaid agreement is shown duly signed and executed by the parties. The appraisers, *supra*, were duly sworn and qualified. The two appraisers duly selected R. F. Vardeman as umpire.

Defendant's answer duly sets forth the award as follows:

"We have carefully examined the premises and remains of the property hereinbefore specified, in accordance with the foregoing appointment, and have determined the sound value and loss and damage to be as follows:

|  | Sound Value | Loss and Damage |
|---|---|---|
| "Dwelling house on Highway #24, east of Independence, Mo. | $5500.00 | $2965.21" |

Defendant alleges full compliance with the award and the answer concludes by setting forth receipt of plaintiffs as follows:

"This receipt to be signed by all parties in interest and attached to policy—(IS 35398)—original draft was issued to Michael Petrovic and Mildred Petrovic and Home Owners Loan Corporation in amount of $1,561.56 in full satisfaction, payment and release of all claims for

loss or damage by fire which occurred on the 26th day of March, 1938, to property described in policy No. SFT 85087 of Kansas City, Missouri, agency and in consideration of said payment the insurance under said policy is hereby cancelled.

> "(Signed) MICHAEL PETROVIC
> "MILDRED PETROVIC."

Plaintiffs filed reply alleging paragraph three, of defendant's answer, *supra*, is of no force and effect by reason of provisions of section 5930, Revised Statutes Missouri, 1939, and copy said section in the reply. Plaintiffs' reply further admits as to submission, and further alleges said agreement as not binding by reason of provisions of section 5930, Revised Statutes Missouri, 1939.

Plaintiffs' reply further alleges as follows:

"Plaintiffs admit that B. E. Baer was selected by the defendant as an appraiser and that Orville Campbell was selected by the plaintiffs as an appraiser, and that R. F. Vardeman was selected as an umpire, and that two of said parties B. E. Baer and R. F. Vardeman did make an award to these plaintiffs for the sum of One thousand five hundred and sixty-one and 50/100 ($1,561.50) Dollars on account of said loss, and plaintiffs admit that they have received from the defendant the sum of One thousand five hundred sixty-one and 50/100 ($1,561,50) Dollars, but allege that the whole face of said policy was due and owing these plaintiffs from and after the said fire, and that after crediting the payment of said sum of One thousand five hundred sixty-one and 50/100 ($1,561.50) Dollars, there is still due and owing to these plaintiffs the sum of Six hundred sixty-three and 44/100 ($663.44) Dollars. Further replying these plaintiffs state that the purported appraisal as set up in defendant's answer was not made by disinterested appraisers but was the result of fraud and corruption and bad faith on the part of this defendant, in that the opinion of the umpire Fred Vardiman was influenced by the defendant having wrongfully and corruptly paid him for so doing.

"Further replying to defendant's answer plaintiffs state that the umpire Baer was not disinterested and was in fact regularly employed at intervals by the defendant and its agents to do work and make repairs for it, which facts were unknown to these plaintiffs until this time.

"That the said appraisement was the result of bad faith toward these plaintiffs and does not reflect their honest judgment and opinion of the loss sustained by the plaintiffs."

Trial was to a jury, resulting in verdict as follows:

"We, the jury, find the issues in favor of the plaintiffs in the principal sum of $663.44 together with interest thereon from June 1-38 in the sum of $93.98, making a total aggregate judgment in favor of plaintiffs in the sum of $757.42."

Judgment was entered in accordance with the verdict and defendant duly appealed.

## OPINION.

We will continue to refer to the parties as plaintiffs and defendant.

The defendant, appellant, assigns as error the court's refusal to direct a verdict in its behalf and assigns the following reasons: (a) "There was no competent evidence that the appraisal award was invalid," and (b) "That acceptance and cashing of draft by plaintiffs in full payment and satisfaction releases and discharges defendant from further liability."

As applicable to the above, first, the agreement of arbitration entered into by the parties expressly provides that it will not "determine, waive or invalidate any of the rights of either party to the contract of insurance."

Second, under the provisions of section 5930, Revised Statutes Missouri, 1939, as interpreted by the courts of this State (Prather v. Ins. Co., 188 Mo. App. 653, 176 S. W. 527), arbitration has no application to total loss.

Plaintiffs' petition herein clearly alleges total loss.

If plaintiffs' evidence makes a submissible case on the issue of total loss, as plead, then such issue should be submitted to the jury for the reason that by entering into an arbitration the plaintiffs waived no right to have such issue determined. This is so not only as a matter of law, but also under the very terms of the arbitration agreement.

The record herein includes numerous photographs of the property taken before and after the fire. These photographs were shown to the jury and witnesses were interrogated in reference to the same.

In addition to the above, the plaintiffs called as a witness Mr. Orville Campbell, a building contractor. In the course of the direct examination of Mr. Campbell, the following occurs:

"Q. (By Mr. Burrus) Mr. Campbell, tell the jury whether or not the part of the house that was left, studdings and those portions that were left, whether or not that could be utilized to advantage by reconstructing the house? A. Well, not to any great extent.

"Mr. Trippe: Now, I move to strike that out. Could it be used?

"Mr. Burrus: To advantage.

"Mr. Trippe: What was left there?

"Mr. Burrus: No; the question is, 'could it be utilized to advantage?'"

"The Court: Objection overruled.

"To which ruling and action of the Court, the defendant at the time duly excepted and still excepts.

"Q. (By Mr. Burrus) Could it be used to advantage? A. Well, it could be used, but then there was a lot of cost there getting it straightened up to use again.

"Mr. Trippe: I move to strike out the last part.

"The Court: Objection overruled.

"To which ruling and action of the Court, the defendant at the time duly excepted and still excepts.

"Q. (By MR. BURRUS) Would the cost it would take to get it out so you could use it be greater than the value of it after you did use it? A. Well, I would say in old work—

"MR. TRIPPE: I move to strike that out.

"Q. (By MR. BURRUS) This particular house, not any place, but this particular house. A. Well, I would say that it would cost more to fix the old house than it would—

"Q. Than it would starting over? A. Yes, sir.

"Q. Tell the jury whether or not in your opinion this house had lost its character and identity—

"MR. TRIPPE: I object to that last part as calling for a conclusion.

"THE COURT: Objection overruled.

"To which ruling and action of the Court, the defendant at the time duly excepted and still excepts.

"Q. (By MR. BURRUS—Continuing) As a building and whether or not the part that was left could be utilized to advantage for rebuilding it? A. Just repeat the question, again, please.

"MR. BURRUS: Please read the question.

(Last question read by reporter.)

"A. Well, there was some semblance of a house left there, the side walls were standing, but the cost of replacing it and getting it back in shape like it was would really cost more than if you did not have any house there at all, except just the bare foundation."

We conclude, the above considered, that an issue of fact was made on the question of whether or not there was a partial or total loss, and as to such issue the jury resolved such issue in favor of plaintiffs.

As to defendant's point "b", accepting and cashing draft, we conclude that such does not defeat plaintiffs' action for the balance. [Spencer v. Farmers Mutual Ins. Co. of Sullivan Co. (Mo.), 65 S. W. (2d) 665.]

We rule against defendant's contention that directed verdict should have been given in its favor.

Defendant assigns as error the admission of testimony of C. Q. Lewis, Jr. Mr. Lewis was called as a witness by plaintiffs for the purpose of substantiating the allegation of fraud in the appraisal and this witness was permitted to testify, over the strenuous objections of defendant, to a conversation with Mr. Vardeman, the umpire chosen by the appraisers.

As to the above, there is record showing as follows:

"Q. (By MR. BURRUS) What was the conversation you had or substance of the conversation you had with Mr. Vardeman with reference to this appraisal? A. Well, Mr. Vardeman was with the Badger Lumber Company and the Badger Lumber Company and I, together, we were working in conjunction with the loans on my end of it and theirs of the sale of building material on their end of it. I would turn the Badger Lumber Company all of the applications for new construction loans—

"Mr. Trippe: Well, I object to all of this. What was the conversation?

"Q. (By Mr. Burrus) Yes; it is not a matter of your relations between the two of you, but just what was the conversation between him and you with reference to this particular appraisal? A. Mr. Vardeman asked me to go out and see this place for a loan; he said that the house had burned and he thought there would be a good chance of getting a loan on it and I asked him what the situation was, whether it was to be a new house, complete, or was it to be repaired and he said, 'he did not know, that I could find out from Mr. Petrovic, but they had figured the house and made an appraisal on it and that there were three—two appointed appraisers and he was chosen as the third and after he was in the appraisal end of it and figured it, he figured it low for the insurance companies and they had paid him $50 for making that low appraisal and that was in addition to the fee that he was supposed to get for his appraisal.'

"Q. (By Mr. Trippe) Is that what he said now? A. That is exactly what he said; a lot more of it if you want to know it.

"Q. (By Mr. Burrus) Well, tell us all about it.

"Mr. Trippe: Go ahead, if it has anything to do with this.

"A. I asked him, 'How he came to do a thing of that kind,' because I had all the respect in the wide world for him and I had known him all my life and I said, 'I cannot understand you doing a stunt of that kind,' and he said, 'Well, I just needed $50 so bad,' and he says, 'I did not think it would make any difference to anybody else.' "

The above conversation purports to have been with the said umpire after the appraisal and at a time when the said umpire represented neither the plaintiffs nor the defendant. The testimony was purely hearsay.

Plaintiffs in their brief filed herein, make no attempt to justify the admission of the above testimony, but indulge in the presumption that there is shown a total loss and, therefore, that the testimony relates to testimony having no bearing whatsoever upon plaintiffs' right to recover, and therefore, if error, the same is harmless.

It has often been ruled by the courts of this State that admission of improper testimony, which is entirely immaterial to any issue that is being tried, does not constitute reversible error.

A well balanced opinion discussing the above rule is found in Lindsay v. Bates, 322 Mo. 294, 16 S. W. (2d) 190.

From a careful study of the record herein, we conclude that the case at bar has distinguishing features from those cases wherein the above rule has been applied.

The plaintiffs herein, not content to stand alone upon the allegation of total loss, did, during the trial, by amendment of petition, inject the issue of fraud and were permitted over the objection of defendant to have the witness testify to highly prejudicial hearsay testimony on such injected issue. Such testimony, we conclude, is such as is

calculated to poison the minds of the jury against the defendant and depreciate the testimony of defendant.

We have held, *supra*, that the testimony raises an issue of fact as to whether or not there was a total loss. The defendant is entitled to a fair and impartial trial on such issue. Plaintiffs are unwarranted in assuming in their brief that the loss was total. Whenever in a proper trial, wherein prejudicial error is not injected, a jury finds that there was a total loss, then such fact stands as a fact. However, a verdict of a jury in a trial where prejudicial error is shown, gives rise to no presumption of such fact.

We conclude that the admission of the hearsay testimony, *supra*, constitutes reversible error.

As this cause will be remanded for rehearing, we comment briefly on other claims of error found in defendant's brief.

Complaint is made of plaintiffs' instruction No. 3. This instruction submits to the jury the question of the fairness or unfairness of the arbitration award. There is no competent evidence going to such issue.

Complaint is made as to the refusal of defendant's instruction No. 5. The issue in this case is as to whether or not there was total loss. The court, in plaintiffs' instruction No. 2, clearly presents such issue. We see no error in refusal of defendant's instruction No. 5.

Complaint is made as to the refusal of defendant's instruction No. 6. This is a peremptory instruction, to the effect that the finding of the jury be that there was not a total loss. We conclude there was no error in refusing the same.

The judgment is reversed and the cause remanded. All concur.