ROBERT A. WILSON v. KANSAS CITY PUBLIC SERVICE COMPANY, Appellant.—No. 39640.—193 S. W. (2d) 5.

Division One, March 11, 1946.

*Charles L. Carr* and *Harding, Murphy & Tucker* for appellant.

1034.

*Clyde J. Linde* and *Langworthy, Matz & Linde* for respondent.

■ BRADLEY, C.—Action for damages for personal injury. Verdict and judgment for $12,000 went for plaintiff and defendant appealed.

Plaintiff was the driver of a laundry truck in Kansas City, and on December 5, 1942, he parked the truck, headed north, about midway of the block on the east side of Belleview Street, in order to deliver laundry to an apartment building on the east side of the street. Defendant's street car approached from the south, struck the partly opened door of the truck, causing it to buckle in on plaintiff, who, according to his evidence, was standing on the street, back to the west, and was bent over the folded down seat searching out the laundry package to be delivered, with partly opened door resting on his back or hips.

Plaintiff alleged primary and humanitarian negligence, but went to the jury only under the humanitarian negligence charge, and on the theory that by the exercise of ordinary care the street car could have been stopped or a reasonably sufficient warning given in time to have avoided injuring him. Defendant answered by general denial and a plea of contributory negligence.

Error is assigned: (1) On the refusal of defendant's motion for a directed verdict; (2) on plaintiff's instruction No. 1; (3) on the admission of evidence; and (4) on an alleged excessive verdict.

The distance from the east curb of Belleview to defendant's northbound street car track was 10 feet, 7½ inches. The overhang of the street car was 18 inches. Plaintiff's laundry truck was 5 feet and 6 inches in width, and was parked with the curbside wheels about 1½ or 2 feet from the curb. It was not snowing when plaintiff parked his truck, but the night before and that morning from 2 to 4 inches of snow had fallen and the snow from the sidewalk where plaintiff parked had been removed to the gutter. Plaintiff said that because of the snow he could not see the curb. North from Ward Parkway, an east and west drive, there was a 3½% up grade. From the parked laundry truck it was 170 feet south to Ward Parkway. Brush Creek, extending east and west, is immediately south of Ward Parkway, and the street car tracks, after crossing the trestle south over the creek, curve to the west. A photograph in evidence shows some trees and shrubbery west of the trestle and to the right of the curve to the west.

Plaintiff came from the west on Ward Parkway, turned north on Belleview, and testified that when he turned he did not see any street car, and that when he stopped he looked at his rearview mirror and that no street car was coming from the south. He said when he stopped, and after looking into the rearview mirror, he opened the truck door, got out, looked south, could see 300 feet, but saw no street

car; that he did not again look south; folded down the truck seat, leaned over it and went to looking for the laundry package he was to deliver at the apartment; that the truck door was resting against his back or hips; that he was "busy there" a minute and a half or two minutes, and that just about the time he found the laundry package to be delivered the street car struck the truck door; that he did not see the street car, did not hear any gong, and did not hear the approach of the street car.

Plaintiff's witness, Joe Birmingham, who saw at least a part of what occurred, corroborated plaintiff in some respects. He testified when he first saw the street car it was 3 or 4 feet south of the truck; that the front end of the street car was about 10 feet in front of the truck when the truck door was struck, and that there was no change in the speed of the street car until the impact. The street car, according to the evidence of the operator, infra, just to the rear of the front door, was 6 inches wider than at the front end.

Pearl Collins Erhart was operating the street car, and as a witness for defendant, testified: "I stopped at 49th street (next south of Ward Parkway) and as I was coming north on Belleview, saw a truck parked about two feet from the curb, but did not see any door or anybody about the truck; thought I could pass; parked two feet out, there was clear passage. The door was not open when I first saw the truck. I was traveling around 15 miles per hour and I didn't have any reason to slow down; going up hill on a grade of $3\frac{1}{2}\%$ at 15 miles per hour, under the conditions that existed, I could have stopped in 60 or 65 feet. When I got about 15 feet from the truck, the door opened. I sounded the gong, threw my car in emergency and, as I went by, the door of the street car struck the truck. I stopped as soon as I could; went back to the truck and asked him (plaintiff) if he was hurt and he said he didn't think he was. I asked for his name, address and car license and got all that." And, as stated, supra, Erhart said the street car just back of the front door was 6 inches wider than at the front end. Erhart was corroborated in some respects by other witnesses for defendant.

 Defendant says that plaintiff failed to make a submissible case for the reason that the evidence does not tend to show that he was in imminent peril. As stated, it was 10 feet, $7\frac{1}{2}$ inches from the east curb of Belleview to the northbound street car track; plaintiff's truck was parked $1\frac{1}{2}$ or 2 feet from the curb; the truck was 5 feet, 6 inches in width; the overhang of the street car was 18 inches. If the truck was parked 2 feet from the curb, then the clearance between the street car and the truck, with the truck door closed, was $19\frac{1}{2}$ inches. According to plaintiff's evidence, he had his feet on the street, facing east, his body leaning over the folded down seat with the door resting on his back or hips, and it is conceded that the truck door was struck.

According to plaintiff's evidence, he was leaning over the seat, in the manner stated, for 1½ or 2 minutes, and at the trial he was asked to lean over for the same length of time, as nearly as he could, that he was leaning over the truck seat. This test showed one minute and five seconds. The street car was traveling at 15 miles per hour, or approximately 22½ feet per second, and, absent stops, would have traveled, in one minute and five seconds, a distance of approximately 1468½ feet. And defendant's operator, when he rounded the curve and turned north over Brush Creek, had an unobstructed view north.

To support the assignment on the refusal of the motion for a directed verdict defendant cites: Lennon v. St. Louis & Suburban Ry. Co., 198 Mo. 514, 94 S. W. 975; Ziegelmeier v. East St. Louis & Suburban Ry. Co., 330 Mo. 1013, 51 S. W. (2d) 1027; Lotta et al. v. Kansas City Public Service Co., 342 Mo. 743, 117 S. W. (2d) 296; Mahl v. Terrell et al., 342 Mo. 15, 111 S. W. (2d) 160; Bates v. Brown Shoe Co., 342 Mo. 411, 116 S. W. (2d) 31; Farris v. Thompson (Mo. App.), 168 S. W. (2d) 439.

In the Lennon case plaintiff's wife was struck and killed by a street car. She had been standing at a huckster's wagon from 3 to 5 feet south of the track in the middle of the block. She turned from the wagon when an eastbound street car was about 25 feet away, stepped on the track, and was struck. Street cars had passed while persons were standing between the huckster wagon and the track, and had she remained where she was standing she would not have been struck. It was held that Mrs. Lennon was not in imminent peril while standing at the huckster wagon, and that the street car motorman had the right to presume that an adult person would not step immediately in front of the street car.

Manifestly, the Lennon case does not support defendant's contention that a verdict should have been directed. Plaintiff did not move from a place of safety to one of peril. According to his evidence he did not move towards the track as the street car approached, and according to his evidence, the jury could find that the door of the truck was in the same position it was when struck from the time the street car turned north, a point some 300 feet away. In the brief defendant says: "If plaintiff started to straighten up or push back after the street car was actually in the act of passing it would have been very simple for him to have pushed the door even so little as an inch and push it into the moving street car, and it would seem perfectly logical that he did just that." But that is not the evidence.

It will not be necessary to review the other cases cited by appellant on the assignment based on the refusal of the motion for a directed verdict. Neither of these cases supports the assignment. The question of plaintiff's peril was for the jury. State ex rel. Siegel v. Daues et al., 318 Mo. 256, 300 S. W. 272; Murray v. Kansas City Public Service Co. (Mo. Sup.), 61 S. W. (2d) 334; Sublett v. Terminal R.

1038

Assn., 316 Mo. 1082, 294 S. W. 718; Lankford v. Thompson, 354 Mo. 220, 189 S. W. (2d) 217.

One of appellant's complaints on plaintiff's instruction No. 1 is that it is without evidentiary support. The point is that plaintiff did not make a submissible case under the humanitarian negligence submitted. We ruled that question, supra. Also, defendant says that the instruction assumes that plaintiff was in a position of imminent peril. Instruction No. 1, after hypothesizing the situation, continued, "and if you find that plaintiff was in position of imminent peril and danger of being injured thereby, and if you further find and believe from the evidence that defendant's agent and employee, while operating said street car, saw or by the exercise of ordinary care could have seen said truck and the plaintiff in a position of imminent peril and danger of being struck by said street car, if you so find, and that plaintiff was unaware of such impending danger, if you so find, . . . ." Manifestly, there is no merit in this complaint.

The evidence complained of was on the question of the loss of earnings. For some time prior, and at the time of injury, plaintiff was a laundry truck driver for the Bachelor Laundry Company, and was on a 35% commission basis. He testified that his average weekly earnings were from $32.50. He said that he had been foreman at laundries, was familiar with the method of operation, payment of commissions, laundry prices, etc.; that he had kept familiar with rates of pay and the basis of pay. Plaintiff's wife worked at the Standard Laundry, and he was asked: "Q. And what are the boys (at the Standard) averaging now on their laundry routes comparable to those in the last four or five years?" Then the record shows the following:

"Mr. Tucker (counsel for defendant): Just a moment, please, before you answer that. You haven't been foreman since this accident, have you? A. No, I haven't. Q. So your knowledge is not from actual experience, that is, your knowledge as to what they are making now is not based upon your experience as foreman before the accident? A. No, sir. Q. Your knowledge now is what somebody has told you since? A. No, no, no, what I know. Q. How do you know it except by what somebody has told you? A. By looking at the records of the drivers' routes. Q. What access have you had to records of drivers' routes? A. All of us drivers in laundry routes showed one another their route sheets. Q. You haven't been a driver, have you? A. No, but I know what they make, though. Q. You mean you looked at their record sheets, is that what you mean? A. You don't want hearsay, then, do you? Q. No, I don't. A. Okay. Mr. Tucker: All right."

Then plaintiff's counsel took over and the following occurred: "Q. Well, have you looked at the route sheets of these bus drivers? A. Yes, sir. Q. What laundry? A. Standard Laundry. Q. Is your wife down there? A. She is the one that takes care of that. Q. Have

you kept acquainted with the amount the fellows are making at the Standard Laundry? A. I have. Q. Since you were injured? A. I have. Q. Now, state how much the boys are making per week on their routes? Mr. Tucker: That is objected to as hearsay and not the best evidence. If it came off the laundry route— A. I have seen the record myself. The Court: Overruled. I think he has shown qualifications, show what the average pay is on those routes; exception. A. Run from $80.00 to $140.00 a week. Mr. Tucker: Move the jury be instructed to disregard it as not the best evidence, not competent evidence. The Court: Overruled; exception. Mr. Tucker: Move a mistrial. The Court: Overruled; exception.''

It will be noted that plaintiff testified that his average weekly earnings at the Bachelor Laundry, prior to injury, was $32.50, and that the laundry delivery truck drivers at the Standard at the time of trial were earning from $80 to 140 per week. Such earnings would amount, respectively, to $4160 and $7280 per year. As stated, plaintiff was injured December 5, 1942. The trial was April 2, 1945, 2 years and 4 months after injury. In the meantime plaintiff had driven a laundry delivery truck for the Standard Laundry from January 9, to September, 1943, practically 8 months. His average weekly earnings during the 8 months were $42.50, or approximately $1445 for the eight months. According to plaintiff, due to his injury, he has been incapacitated since September, 1943. As stated, his average weekly earnings, prior to injury, were $32.50. This, for the 2 years and 4 months from injury to trial, less the amount earned at the Standard, would amount, in loss of earnings, to $2500, approximately. Over the same ▮ period, based on the Standard pay, less the earnings for the 8 months, loss of earnings would have amounted to over $8,000 at $80 a week, and over $15,000 at $140 per week.

To support the contention that the complained of evidence was hearsay and incompetent, appellant cites: Bartlett v. Kansas City Public Service Co., 349 Mo. 13, 160 S. W. (2d) 740; Petrovic et al. v. Standard Fire Ins. Co., 237 Mo. App. 290, 167 S. W. (2d) 412; State ex rel. Met. Life Ins. Co. v. Shain et al., 343 Mo. 435, 121 S. W. (2d) 789; Munton v. A. Driemeier Storage & Moving Co., 223 Mo. App. 1124, 22 S. W. (2d) 61.

Plaintiff argues that the evidence was not hearsay, but was founded on plaintiff's personal observation, experience, and knowledge, and cites: Wigmore on Evidence (3 Ed.), Sec. 715; Quirk v. Met. Street Ry. Co., 200 Mo. App. 593, 210 S. W. 106, certiorari writ quashed in State ex rel. Met. St. Ry. Co. v. Ellison et al. (Mo. Sup.), 224 S. W. 820; Thomas v. Mallinckrodt, 43 Mo. 58; Tate v. M. K. & T. Ry. Co., 64 Mo. 149; St. Louis, Keokuk, etc. R. Co. v. St. Louis Union Stock Yards Co., 120 Mo. 541, 25 S. W. 399; Seyfarth v. St. Louis & Iron Mt. R. Co., 52 Mo. 449; Nevada & Minden R. Co. v. DeLissa, 103 Mo. 125, 15 S. W. 366; Southern Mo. & Ark. R. Co. v. Woodard et al.,

193 Mo. 656, 92 S. W. 470; Knapheide v. Jackson County, 215 Mo. 516, 114 S. W. 960.

Neither of the cases cited by either ruled a point like or similar to the one here. The nearest approach was the Quirk case, supra. That was an action by a father to recover for loss of services of his injured son, for medical attention, etc. The father went to see the doctor to get the medical bill; the doctor was out, so he got the bill from the doctor's bookkeeper. This bill was held competent to show its amount. 3 Wigmore on Evidence (3 Ed.), Sec. 715, dealing with evidence as to the *value* of the services says:

"The general test, to be gathered from the rulings, is that any one sufficiently familiar with the commercial value of such services may testify. Yet, when the services are of the sort generally termed professional it is probable that a member of the same profession would invariably be insisted upon; the practice in this respect is so settled that the question has seldom been raised. For other kinds of services, there seem to be no specific tests; a familiarity with their kind and value is the standard to be applied." Plaintiff, in the brief, quotes the above from Wigmore. The challenged evidence was not as to the *value* of the services of the Standard truck drivers, but pertained to their pay.

Rigley v. Pryor et al., 290 Mo. 10, 233 S. W. 828, was an action for personal injury resulting from being struck by a train. The cause had been in the court of appeals. That court, in an analysis of the facts, found that the plaintiff was a track walker and was not in the discharge of his duty at the time he was injured. The defendant offered the opinion of the court of appeals in evidence. It was held that the ruling of the court of appeals on the point was hearsay, a conclusion on the facts, "and not competent evidence on any theory." See also, Parks v. Marshall, 322 Mo. 218, 14 S. W. (2d) 590, 62 A. L. R. 835.

We rule that plaintiff's evidence as to the pay, at the Standard Laundry, was hearsay. So far as appears, he could only know from what he had heard or from what he had seen on route sheets. Not only was such evidence hearsay, but it was wholly irrelevant on the issue of earnings. Plaintiff, as stated, was, on the average, earning $32.50 weekly when he was injured. For the purpose of determining the loss of earnings, the presumption is indulged that he would have continued to earn that amount; but it would be pure conjecture to assume that his earnings, had he not been injured, may or would have been that of the laundry truck drivers at the Standard Laundry.

Defendant vigorously assails the amount of the verdict; even says that "plaintiff failed to make a submissible case on injuries." In the situation, it cannot well be said that the complained of evidence was not prejudicial. There is no way by which to determine what effect the complained of evidence had on the issue on the loss of earn-

ings, and in the situation, we do not think that remittitur could cure. Having reached the conclusion that the assignment on the admission of evidence is well taken, it will not be necessary to rule the assignment on alleged excessive verdict.

In the situation, there is no reason to retry the issue on the sufficiency of the evidence to make a submissible case. A party "should not be given a second trial of an issue where there was no error in the first trial on that issue." Hoelzel v. Chicago, R. I. & P. Ry. Co. et al., 337 Mo. 61, 85 S. W. (2d) 126, l. c. 134. See also, Yerger v. Smith et al., 338 Mo. 140, 89 S. W. (2d) 66, l. c. 78; Bowman v. Moore (Mo. App.), 167 S. W. (2d) 675, l. c. 682.

The judgment should be reversed and the cause remanded with direction to retry only the issue of amount of damages, and then enter judgment for whatever sum may be found. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.