[1] This is an action for damages for personal injuries and property damage sustained by plaintiff as a result of a collision between an automobile he was driving and *Page 584 
an automobile driven by the defendant. The collision occurred April 9, 1948, in the town of Lentner, in Shelby County. Just prior to the accident both parties had been traveling eastwardly on Highway 36 — the plaintiff trailing defendant's car. When defendant reached a crossroad in the town of Lentner he turned partly off the highway and stopped his car. Thereafter, plaintiff's car ran into the rear of defendant's car, with the result that plaintiff suffered serious injury. His car was also damaged. There was a verdict and judgment below for plaintiff. Defendant has appealed.
[2] The petition alleged that defendant was negligent in the following respects:
[3] (1) That defendant negligently stopped or checked the speed of his automobile without extending his arm in a horizontal position so that the same might be seen to the rear of his vehicle.
[4] (2) That defendant negligently permitted the mechanical or electrical signalling device on his said automobile, designed to display a signal plainly visible from the rear to indicate the intention of the driver to stop or slacken the speed of his motor vehicle, to become out of repair so that the same would not operate.
[5] (3) That defendant negligently stopped his automobile in the traveled portion of the highway without placing the right-hand side of said vehicle as near the right-hand side of the highway as practicable.
[6] The accident occurred about 7:30 P.M. It was dark at the time. Both parties were at the time on their way to a Veterans' meeting in Shelbina. They were traveling eastwardly on Highway 36, and as they approached the town of Lentner plaintiff was trailing defendant's car a distance of about 200 feet. Plaintiff was aware of defendant's car in front of him at the time. The lights on both cars were lit. It was a clear night, and the highway was dry. Both cars were traveling approximately forty-five miles per hour at the time.
[7] At the town of Lentner there is a crossroad. As defendant approached the crossroad at the time in question he observed a hitch-hiker standing there thumbing a ride. Defendant decided to give this hitch-hiker a ride. He thereupon swerved his car partly off the highway and applied the brakes. Plaintiff thereafter crashed into the rear of defendant's car.
[8] Plaintiff's testimony as to the occurrence is as follows:
[9] "Q. When you got to Lentner, what did the Chinn car do? A. It made a sudden stop. * * * Stopped all at once.
[10] "Q. Did he stick out his arm? A. No, he didn't.
[11] "Q. Did he stick his hand out of the car anywhere? A. No.
[12] "Q. Did any stop-light light up on the back of that car? A. No, there wasn't any.
[13] "Q. And about how far were you behind him when you first realized that he had stopped there? A. Oh, approximately fifty feet.
* * * * * *
[14] "Q. Where did he stop, on the concrete or not? A. Partly on it.
[15] "Q. How much of his car, if any, was off of the concrete? A. Two wheels."
[16] Plaintiff further testified that when he realized defendant had stopped, he took his foot off the gas pedal and swerved his car to the left in an effort to avoid striking defendant's car. Plaintiff was unsuccessful in this attempt, with the result that the right front wheel of his car struck the left rear of defendant's car. Plaintiff's car then continued eastward and turned over at a point about two hundred feet east of the point where the collision occurred.
[17] On cross-examination plaintiff testified that as he proceeded eastwardly on the occasion in question he could see the taillights of the defendant's car, and that the lights of his car revealed the car in front of him at all times. He further stated that he knew he was approaching the town of Lentner at the time and knew there was a crossroad there; that he did not slacken the speed of his car as he approached the town; that he was watching the road ahead; that the lights of his car revealed the highway as much as 200 feet ahead. He further testified that he did not observe the distance between the two cars *Page 585 
lessening until defendant was fifty feet from him, at which time the two right wheels of defendant's car were off the concrete slab. He stated that when he took his foot off the accelerator and swerved to the left he was perhaps travelling thirty-five miles per hour. He further testified that all he did to avert the accident was to take his foot off the accelerator and try to miss defendant's car. He further stated that at the time of the collision he was traveling thirty-five miles per hour and perhaps thirty miles an hour after his car hit defendant's car.
[18] Plaintiff further testified that the brakes on his car were in good condition at the time of the accident. Plaintiff also testified that he had a conversation with the defendant the day after the accident in which defendant stated he did not think his stop light on his car was working at the time. He also stated that defendant in this conversation said he made a quick stop and did not give any arm signal of his intention so to do.
[19] Defendant testified that just before he reached the crossroad in Lentner he observed a hitch-hiker standing on the shoulder of the road southeast of the intersection, and that he began to stop his car when he reached the crossroad, or just before he reached it. He further testified: "I was stopping pretty fast and was pulling over in the ditch there."
[20] Defendant further testified that at the time of the collision his car was still in motion, but was not moving very fast. He stated that at least two of the wheels of his car were off the highway at the time of the accident, and that he was twenty-five or thirty yards from the crossroad when he finally stopped.
[21] On cross-examination defendant testified:
[22] "Q. You told the jury you saw this hitch-hiker, you made a quick stop, is that right? A. That's right.
[23] "Q. What do you mean by a `quick stop?' A `sudden stop?' A. Well, it was kind of sudden."
[24] Defendant further testified that he did not at the time know that there was a car following him. He then gave the following testimony:
[25] "Q. What signal did you give that you were going to stop? A. None.
[26] "Q. You didn't give any? A. No.
[27] "Q. Was your car equipped with these automatic signal lights that go on when you step on the brakes? A. Well, if it was, it wasn't working.
* * * * * *
[28] "Q. And it wasn't working that night? A. There was none working, no.
[29] "Q. None working — so you are telling this jury then that there wasn't any signal given by you of your intention to stop there to cars that were following you? A. That's right.
[30] "Q. You didn't stick your arm out, your left arm out the window, or anything like that, did you? A. No."
[31] George Todd, at the time in question, was following the plaintiff's car and was approaching the intersection when the collision occurred. He stated that defendant's car did not stop west of the intersection, but did stop east of the intersection. He stated that he drove to the scene of the collision and got out of his car; that at that time plaintiff's car was cross-ways in the center of the highway and about seventy-five yards east of the defendant's car; that the latter was east of the intersection and on the south shoulder of the highway, parallel with the concrete slab. Mr. Todd stated that there was a highway town sign on the south side of the highway just west of Lentner, about 500 feet from the intersection, and a crossroads sign between the town sign and the intersection.
[32] Edmund T. Ferguson, a highway patrolman, arrived at the scene of the accident shortly after it occurred. He found the defendant's car parked on the south side of the highway, about fifty feet east of the intersection, and the plaintiff's car parked on the north side of the highway, approximately facing west, and 200 feet from the intersection. He stated that he placed his foot on the brake pedal of plaintiff's car and that it went all the way to the floor of the car. He stated that the right front fender and top of plaintiff's car were dented, and that *Page 586 
the glass in the windshield and left side window was broken.
[33] In this court appellant urges that the trial court erred in refusing to sustain defendant's motion for a directed verdict, because: (1) plaintiff failed to make a case of negligence against defendant; and (2) under the evidence, plaintiff was guilty of contributory negligence as a matter of law.
[34] Section 8385(h), R.S.Mo. 1939, Mo.R.S.A. § 8385(h), provides: "An operator or driver when stopping, or when checking the speed of his vehicle, if the movement of other vehicles may reasonably be affected by such checking of speed, shall extend his arm in a horizontal position so that the same may be seen in the rear of his vehicle."
[35] It appears from the testimony that just prior to the collision defendant was proceeding eastwardly on the highway at a speed of forty-five miles per hour. Plaintiff was also driving his car in the same direction, at the same rate of speed, and traveling about 200 feet behind the defendant's car. The headlights on the plaintiff's car were turned on at the time and defendant's car was visible to plaintiff while approaching the town of Lentner, and it is reasonable to suppose that plaintiff could have seen an arm signal if one had been given by the defendant. At the crossroad in Lentner, without giving any signal whatever, defendant suddenly slackened the speed of his car with the intention of stopping to pick up a hitch-hiker. The mechanical signalling device on defendant's car was not working at the time.
[36] We think it plain that, under the foregoing facts and circumstances, it was for the jury to say whether defendant was, at the time in question, under a duty to give the statutory signal of his intention to stop, and that his failure to do so was negligence. Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243. But appellant says that plaintiff was guilty of contributory negligence as a matter of law in that: (1) on the occasion in question he traveled too close to defendant's car; (2) he failed to observe the slackening of the speed of defendant's car as soon as he would have had he been exercising the highest degree of care; and (3) when confronted with the emergency he should have applied the brakes on his car instead of swerving.
[37] The evidence shows that both cars were traveling at the rate of forty-five miles per hour with a distance between them of 200 feet as the parties approached the town of Lentner. At the crossroad in Lentner defendant observed a hitch-hiker and thereafter made a sudden stop without giving any signal of his intention so to do. Plaintiff did not observe this sudden movement until he had reached a point approximately fifty feet from defendant's car. He swerved his car to the left, but was unable to avoid the collision. He did not apply the brakes on his car.
[38] Do these facts show contributory negligence as a matter of law? We think not. It certainly could not be said to be negligence, as a matter of law, for one to drive an automobile at the rate of forty-five miles per hour 200 feet behind another automobile going at the same rate of speed. Under such circumstances a person would have ample time and opportunity to take steps to avoid a collision if the party he is following observes the rules of the road in making a stop, or even makes an emergency stop which might be reasonably anticipated, without giving the statutory signals.
[39] Nor do we think that plaintiff was negligent as a matter of law in failing to observe defendant making the stop until he (plaintiff) was fifty feet from defendant. There was no sudden emergency which caused defendant to make the sudden stop, and a jury might reasonably find that plaintiff was not under a duty to anticipate that defendant would do so.
[40] Plaintiff was traveling at the rate of forty-five miles per hour, or sixty-six feet per second. He was not required, in the exercise of the highest degree of care, to keep his eyes constantly focused on the defendant's car in the anticipation that defendant might violate the rules of the road. It should also be borne in mind that with the two cars going in the same direction, the slackening of the speed of the defendant's car would not be instantly realized, with the *Page 587 
result that during this fleeting period of time plaintiff's car might well travel to a point fifty feet distant from defendant's car, and we believe a jury might reasonably find that plaintiff's car reached this point through no negligence of the plaintiff.
[41] Nor do we think that plaintiff's failure to apply the brakes on his car convicts him of contributory negligence as a matter of law. Plaintiff was, at the time he realized defendant had stopped, approximately one second, in point of time, away from defendant's car. He was faced with a sudden emergency. He could not have stopped his car in the fifty feet space between his car and that of defendant. Instead of applying the brakes, he swerved to the left in an attempt to avoid the collision. Whether he was negligent in not applying the brakes was, in our opinion, a question for the jury.
[42] Appellant urges that Instruction No. 1, given at plaintiff's request, is erroneous, in that it contains an improper definition of the term "highest degree of care." That portion of the instruction complained of reads as follows: "And in this connection you are further instructed that by the term, `highest degree of care,' as used in these instructions, is meant the highest degree of care that an ordinarily careful person would exercise under the same or similar circumstances to those shown by the evidence in the case; and that by the term `negligence' as used in these instructions, is meant the failure to exercise the highest degree of care."
[43] The statute, Sec. 8383, R.S.Mo. 1939, Mo.R.S.A. § 8383, provides that every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care in so doing. The highest degree of care has been defined to be that degree of care that a very careful and prudent person would ordinarily exercise under the same or similar circumstances. Jackson v. Southwestern Bell Telephone Co., 281 Mo. 358,219 S.W. 655; Jungeblut v. Maris, 351 Mo. 301, 172 S.W.2d 861.
[44] The instruction under review casts upon plaintiff a burden less than the law requires. It imposes on him only the duty of "ordinary care." The instruction was for that reason clearly erroneous. There were several pleas of contributory negligence submitted to the jury, and defendant was entitled to have the jury properly instructed as to the degree of care required of plaintiff at the time.
[45] The giving of plaintiff's Instruction No. I was error materially affecting the issue of plaintiff's contributory negligence, and for that reason the judgment cannot stand. However, since there is no claim in this court that the verdict is excessive, or that the error in the instruction had any effect on the issue as to the amount of damages recoverable, there need be no new trial on that issue. Civil Code of Missouri, 1943, Sec. 140(c), Mo.R.S.A. § 847.140(c); Brown v. Reorganization Inv. Co., 350 Mo. 407, 166 S.W.2d 476; Wilson v. Kansas City Public Service Co., 354 Mo. 1032, 193 S.W.2d 5.
[46] The judgment is reversed and the cause remanded with directions to retry only the issue of defendant's liability. The trial court is further directed to hold in abeyance the verdict as to damages until the issue of defendant's liability is retried, and then to enter judgment against defendant for the amount of said verdict if defendant be found liable at said retrial, but to discharge defendant if there be a verdict in his favor.
[47] HUGHES and McCULLEN, JJ., concur. *Page 588