Louis A. Lankford v. Guy A. Thompson, Trustee of the Properties of the Missouri Pacific Railroad Company, Appellant.—No. 39357.—189 S. W. (2d) 217.

Division One, July 2, 1945.

Rehearing Denied, September 4, 1945.

*Leslie A. Welsh, Richard H. Beeson* and *David P. Dabbs* for appellant.

*Frank C. Kenyon, Jr., Cowgill & Popham, Sam Mandell, Harold W. Fehrenkamp* and *John J. Board* for respondent.

224

BRADLEY, C.—Action for damages for personal injuries received at a crossing. Verdict and judgment went for plaintiff for $25,000 and defendant appealed.

Error is assigned (1) on plaintiff's instruction No. 2; (2) on alleged conflict between plaintiff's instruction No. 2 and defendant's instruction E; (3) on plaintiff's instruction No. 4; (4) on alleged misconduct of juror Morlan on voir dire examination; (5) on the court's refusal to discharge the jury for alleged improper argument; and (6) on an alleged excessive verdict.

Plaintiff, a pedestrian, was struck, and received the injuries complained of, by defendant's southbound freight train on June 10, 1943, at about 4:30 P. M.. Defendant's northbound and southbound tracks crossed at about right angles, 15th street, an east and west street, in Kansas City. There was a Frisco track immediately west of defendant's west or southbound track. Plaintiff was walking east on the south side of 15th street. Defendant's northbound freight train, at the time, was passing over the crossing. Plaintiff stopped, he says, between the rails of defendant's southbound track to wait for the northbound freight train to clear the south pedestrian way over the crossing, and while so standing between the rails was struck by defendant's southbound freight train.

The cause was submitted, under the humanitarian doctrine, upon the alleged failure to warn plaintiff of the approach of the southbound train. There was the usual conflict in the evidence as to ringing the bell and sounding the whistle, but defendant does not claim that a submissible case was not made, hence it is not necessary to say more about the evidence as to negligence.

Defendant says that plaintiff's instruction No. 2 is bad in that it is argumentative, repetitious, injects antecedent negligence in failing to keep a lookout, fails to make plain the meaning of imminent peril, does not require a finding that plaintiff was oblivious of the approach of the southbound train, does not require a finding that plaintiff *would* have heard and heeded a warning of the approach of the southbound train.

In view of the rather numerous complaints on plaintiff's instruction No. 2, we set it out in full.

"The court instructs the jury if you believe from the evidence that plaintiff was in a position of imminent peril of being struck and injured by said southbound train and was oblivious thereof, and if you find that it would have been timely apparent to said southbound enginemen by the use of ordinary care that plaintiff would be struck and injured by said southbound train unless reasonably efficient and timely warning was given him of his aforesubmitted peril from said southbound locomotive and if you find that said southbound enginemen by the use of ordinary care could have known of the above submitted peril and of the above facts, if you find them to be the facts, in time thereafter by using ordinary care and the means at hand to have caused the whistle of said locomotive to be timely sounded and thereby have given plaintiff reasonably efficient and timely warn-

ing, and if you find they could thereby have prevented him being injured, and if you find that after said enginemen, by the use of ordinary care could have known, if so, of his above submitted peril, they gave no timely and reasonably sufficient blasts of said whistle and no reasonably sufficient warning and thereby failed to use ordinary care by the means at 'hand to cause reasonably efficient and timely warning to be given plaintiff of his aforesubmitted peril, and if you find they were thereby negligent and if you find that as a direct result thereof he was struck and injured by said southbound train, then your verdict must be for plaintiff, Mr. Lankford, even though you may believe there were acts and omissions and contributory negligence on his part which did not solely cause his injuries, if you so find, but which may have directly contributed thereto.''

The instruction uses the phrase timely warning three times, and also uses the phrases, timely apparent, timely sounded, and timely and reasonably sufficient blasts. It would seem that the instruction reflects overcaution and is somewhat repetitious, but it is unlikely, we think, that defendant was harmed by such. Defendant cites Trower v. Missouri-Kansas-Texas R. Co., 353 Mo. 757, 184 S. W. (2d) 428, 1. c. 432; Robert v. New York Central R. Co. (Mo. App.), 122 S. W. (2d) 1, 1. c. 5; and 1 Raymond on Instructions, Sec. 102. We do not think that the cases or the text cited support the contention that instruction No. 2 is fatally bad because argumentative and repetitious.

To support the contention that instruction No. 2 is bad because it injects antecedent negligence in failing to keep a lookout, defendant relies on the Trower case, supra; Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S. W. (2d) 116, 1. c. 123; and Wholf v. Kansas City, Clay County & St. Joseph Ry. Co., 335 Mo. 520, 73 S. W. (2d) 195, 1. c. 198. We do not deal in detail with the instructions held bad in these cases. It is sufficient, we think, to say that the present instruction is not subject to the charge that it injects primary negligence in failing to keep a lookout. See Hoelzel v. Chicago, R. I. & P. Ry. Co. et al., 337 Mo. 61, 85 S. W. (2d) 126, 1. c. 130. And instruction No. 2 is not bad for failure to make plain the meaning of imminent peril. Such term or expression does not require definition. Perkins v. Terminal R. Assn. of St. Louis, 340 Mo. 868, 102 S. W. (2d) 915, 1. c. 921; Bryant v. Kansas City Rys. Co., 286 Mo. 342, 228 S. W. 472, 1. c. 474. And as we read instruction No. 2, it submits that plaintiff was oblivious of the approach of the southbound train.

It will be noted that the instruction submits ''and if you find they (enginemen) *could* (italics ours) thereby have prevented him (plaintiff) being injured'', etc. The point made is that *would* should have been used instead of *could*. In Eppstein v. Mo. Pac. R. Co., 197 Mo. 720, 1. c. 737, 94 S. W. 967, and Smithers v. Barker, 341

Mo. 1017, 111 S. W. (2d) 47, the word *could* was used, and no complaint made on its use. In Kick v. Franklin et al., 345 Mo. 752, 137 S. W. (2d) 512, 1. c. 515, *could* and *would* were used, and no complaint was made on such use. In Taylor v. Metropolitan St. Ry. Co., 256 Mo. 191, 1. c. 209, 165 S. W. 327, it is held that there was no material distinction between the words would and could as used in a question there under consideration. It would, in our opinion, be supertechnical and unreasonable to say that defendant was prejudiced by the use of the word *could* in the instruction.

Is there conflict between plaintiff's instruction No. 2 and defendant's instruction E? It will be noted from plaintiff's instruction No. 2, set out, supra, the instruction, after submitting the facts under the humanitarian rule, told the jury, if these facts were found, to find for plaintiff "even though you may believe there were acts and omissions and contributory negligence on his (plaintiff's) part which did not solely cause his injuries, if you so find, but which may have directly contributed thereto." In the brief, defendant says: "The concluding part of plaintiff's instruction No. 2 (the part just quoted), erroneously excludes the defense that plaintiff's negligence was the sole cause of his injuries and in that respect conflicts with defendant's instruction E. . . . A jury, not possessed of technical knowledge of the fine distinctions between sole negligence and contributory negligence, would construe the above language (concluding part of No. 2) to exclude all negligence of plaintiff, both sole and contributory. A jury would construe the phrase 'which was not the sole cause of his injuries' as being a definition of contributory negligence." Defendant's instruction E, a sole cause instruction, is based on defendant's evidence and is as follows:

"The court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence plaintiff stopped and stood at a point west of the west rail of the southbound track mentioned in evidence and remained at said place until the locomotive of the southbound train was on or entering said 15th street, if you so find, and that plaintiff then walked upon said track, if so, and if you find that after plaintiff walked upon the track, said locomotive was in such close proximity to plaintiff that defendant's enginemen, from the position that they were then in on said locomotive, and by the exercise of ordinary care, and with the means at hand, could not prevent plaintiff's injuries, and that said negligence of plaintiff, if you so find, was the sole cause of plaintiff's injuries, and that said injuries were not due to any negligence of the defendant in any particulars set out in other instructions herein, then plaintiff is not entitled to recover, and your verdict shall be in favor of the defendant."

To support the claim of conflict defendant cites Smithers v. Barker, supra. The concluding part of the instruction in the Smithers case

was [341 Mo. 1017, 111 S. W. (2d) l. c. 53] : "And, you are further instructed, this (hypotheses submitted) is so, even though you should find and believe from the evidence, that plaintiff did not exercise due care for his own safety, and was, or was not, then and there drunk and negligent, in getting himself into the aforesaid position of imminent peril, if any, at said time and place."

In disapproving the concluding part of the instruction in the Smithers case, the court said:

"We consider it to be proper in a humanitarian negligence case to inform the jury that contributory negligence of plaintiff is not a defense or that negligence of plaintiff which only contributed to or concurred in his injury does not defeat his recovery. Dilallo v. Lynch (Mo. Sup.), 101 S. W. (2d) 7. However, we cannot approve the language of this instruction in this case because, under defendant's evidence, the jury would have been warranted in finding that plaintiff's negligence was the sole cause of his injury. Accepting the facts that defendant's evidence would show, it would be difficult to conceive of a clearer sole cause case. The broad language above set out would be in conflict with a proper sole cause instruction."

It will be noted that the concluding part of instruction No. 2 in the present case, in effect, told the jury that plaintiff's negligence would not defeat recovery unless it were found that his negligence was the sole cause of his injury. In other words, instruction 2, on the point in hand, was no more than the converse of defendant's sole cause instruction, and was proper. Baker v. Kansas City Public Service Co., 353 Mo. 625, 183 S. W. (2d) 873, l. c. 875; Farmer v. Kansas City Public Service Co. (Mo. App.), 186 S. W. (2d) 766.

Defendant complains of plaintiff's instruction No. 4. The instruction is as follows:

"The court further instructs the jury with regard to (defendant's) instruction E that said instruction is known as a sole cause instruction, and by the term sole cause is meant acts or omissions of plaintiff which solely caused his injuries without any negligence whatever on the part of defendant as submitted in (plaintiff's) instruction 2 directly contributing to his injuries. Therefore, if you find there was any negligence on the part of defendant as submitted in instruction 2 which directly contributed in any degree to plaintiff's injuries, then you cannot find there were acts or omissions of plaintiff which solely caused his injuries, and your finding on the issues submitted in said instruction E, that is, the aforesaid issue of sole cause, should be in favor of plaintiff, Mr. Lankford, and against defendant."

Defendant says that plaintiff's instruction No. 4 is erroneous in that it, in effect, makes defendant's defense of plaintiff's sole negligence an affirmative defense, requires more than ordinary care of defendant's enginemen, directs a verdict for plaintiff "on the single finding that plaintiff's negligence was not the sole cause of his in-

jury'', is repetitious and with instruction No. 2, is argumentative. It is true that a sole cause defense is not an affirmative defense, Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. (2d) 548, l. c. 555; Long v. Mild et al., 347 Mo. 1002, 149 S. W. (2d) 853, l. c. 858, but there is nothing in the instruction that can be fairly construed to mean that it tells the jury that the sole cause defense is an affirmative defense. And neither can the instruction be fairly construed to require ▇▇ more than ordinary care on the part of defendant's enginemen, Baker v. Kansas City Public Service Co., supra [353 Mo. 625, 183 S. W. (2d) l. c. 875], or that the instruction directs a verdict for plaintiff on the single finding that plaintiff's negligence was not the sole cause of his injury. Instruction No. 4 is repetitious in that it, in effect, repeats the concluding direction in instruction No. 2. Repetition in instructions is subject to criticism for emphasizing a given issue, but such is not ordinarily a ground for reversal. Mendenhall v. Neyer et al., 347 Mo. 881, 149 S. W. (2d) 366, l. c. 371, and cases there cited. We do not think the repetition here is such as to justify reversal. Also, we rule that there is no substantial merit in the point that instruction No. 4 considered with instruction No. 2 is so argumentative as to justify reversal. See Woods v. Southern Ry. Co. (Mo. Sup.), 73 S. W. (2d) 374, l. c. 377.

▇ On voir dire defendant's counsel asked: ''Gentlemen, are there any of you who have ever had a claim for damages for personal injury where you were hurt, where you either filed a law suit or made a claim without filing a law suit for personal injuries, where you were hurt and you made a claim against someone because of your injuries? Any of you ever had a claim for personal injuries, either where there was a suit filed or no suit filed?'' There was no response by any member of the panel. After the trial defendant ascertained and alleged in verified ground 13 of the motion for a new trial that juror Morlan (foreman of the jury), in 1942, filed a suit in Jackson County, Missouri, to recover $15,000 damages for malicious prosecution for embezzlement. Plaintiff filed, as for a counter affidavit, the affidavit of juror Morlan, but it will not be necessary to set it out. Juror Morland, in his affidavit, denied any prejudice. Clearly, defendant's inquiry on voir dire was limited to damage suits for *personal* injury, *physical* hurt. Such was the case on trial. In view of the limited scope of inquiry made by defendant on the voir dire examination there is no room to complain. Zimmerman v. Kansas City Public Service Co., 226 Mo. App. 369, 41 S. W. (2d) 579, l. c. 582.

▇ On argument. Argument both for plaintiff and defendant appears in full in the record. In the closing argument for plaintiff, counsel told the jury that 9, 10, or 11 could return a verdict as effective as 12, and then said, ''If one, two, or three want to cut him down (on amount), or one, two, or three men should say, 'Let's make it smaller so there won't be any hereafter', do not listen to that

kind of argument . . . because you weren't brought in here to compromise this case. You were brought in here to fix the damages as the court has outlined them in these instructions, and if you try to compromise the case now, then maybe I have got to compromise your compromise hereafter, and that isn't fair. You fix the damages and if there is any compromising to do hereafter, gentlemen, I will do it in my humble way as best I can for this man whose fate I now place upon your shoulders and upon your consciences.''

Objection was made to the argument ''about him (counsel) compromising in the hereafter'', and then the following occurred: ''The Court: Yes, the jury will disregard that statement.'' Then counsel moved to discharge the jury, and reprimand plaintiff's counsel. Thereupon plaintiff's counsel withdrew the statement and apologized ''for saying it.'' The court then said: ''Gentlemen, there is nothing with reference to a compromise in this case. It was improper argument to make, so disregard that statement. The motion to discharge the jury is overruled.'' Exception was taken to the failure to discharge the jury.

The statement complained of was improper, but we think that the withdrawal, the apology, the trial court's ruling that the statement was improper, and for the jury to disregard it, cured the error. See Jones v. Kansas City (Mo. Sup.), 76 S. W. (2d) 340; Donk v. Frances et al., 351 Mo. 1053, 174 S. W. (2d) 840; Warren v. Giudici, 330 Mo. 483, 50 S. W. (2d) 634.

■ Is the verdict excessive? At the time plaintiff was struck (4:30 P. M.) he was rendered unconscious and so remained until the next day. Part of his right arm was cut off by the train and two other amputations on this arm were performed at the hospital which left the stub of the arm about 5 or 6 inches below the shoulder. He had a cut across the forehead which required 23 stitches and this wound left a scar at the hair line. He had a cut over and under the right eye and many cuts on the back of his head. Three stitches were required to close the wound over the ■ eye and 2 were required under the eye. He had many other bruises of a less serious nature.

Prior to injury his eyes were good, but since the injury his right eye has been failing. Before the injury he did not wear glasses. When he tries to read his right eye waters and he can't read at all without glasses and not well with them. His right hip causes trouble, gets stiff and he is not able to use it well, especially in cold damp weather. He has a dull throbbing headache nearly all the time. This bothers him at night and affects his sleep. He has become nervous, but was not so before the injury. He has developed a tendency to grab and hold the injured arm stub or shoulder. Since the injury he has developed a kidney trouble; sometimes has to get up 5 or 6 times at night; his back hurts all the time. Before the injury he did not have such troubles.

Dr. Luther M. Callaway, an eye specialist and a witness for plaintiff, examined plaintiff's eyes and testified that plaintiff had a retinal degeneration in the right eye nerve head; that the nerve head is where the optic nerve comes into the eye ball; that the retina had a dark blue appearance on the infield. It was the opinion of Dr. Callaway that the degeneration of the retina and the degeneration and impairment of the nerve head of the right eye could have been caused by a blow on the head. Also, it was Dr. Callaway's opinion that the injury to the right eye was permanent and progressive. He said that he tried a corrective lens on the right eye, but that such did not improve the vision.

Dr. H. Louis Hess, an orthopedist, examined plaintiff several times; found a back strain which he attributed to low back ligament injury and he said the back injury might be permanent. He testified on a hypothetical question, detailing plaintiff's injuries, nervousness, kidney trouble, etc., that such nervousness, kidney trouble, etc., could have been caused by being struck by the train.

As stated, plaintiff was injured June 10th, and was taken immediately to the hospital. He left the hospital June 18th, to be married, but returned in 3 days. He remained in the hospital until July 7th. Later, he and his wife moved to an Oklahoma farm (rented) where they resided at the time of the trial (April 10, 1944). Plaintiff testified that since he was injured he has not been able "to earn any money or hold any job or do any work"; that he tried to get a job as a guard at the plant where he was working when injured, but was refused; that he tried at the United States labor bureau in Oklahoma and was turned down there. "Q. What have you done down at the farm? A. Well, I just get around there and do what I can, help my wife and the children feed chickens, cows, stuff like that."

At the time of injury plaintiff was 46 years old, and his expectancy was 23.81 years. He was a machine operator in a war plant and his earnings were $200 per month. Over the period of expectancy his earnings at $200 per month would amount to $57,144.00. Plaintiff's injuries are serious; such is conceded. The total loss of the right arm, and an injury to the right eye which is permanent and progressive and may and probably will result in total loss. In addition to these injuries plaintiff, according to the record, which is not disputed, suffers much physical pain and other physical troubles, kidney, nerves, etc. In view of plaintiff's injuries, age, expectancy, earnings, and the value of the dollar, we do not think that a verdict for $25,000 is excessive. See Howard v. Mobile & Ohio R. Co., 335 Mo. 295, 73 S. W. (2d) 272; Harms v. Emerson Electric Mfg. Co. (Mo. Sup.), 41 S. W. (2d) 375; Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693; Cunningham v. Doe Run Lead Co. (Mo. Sup.), 26 S. W. (2d) 957; Vaughan v. St. Louis Merchants Bridge Terminal Ry. Co., 322 Mo. 980, 18 S. W. (2d) 62; Martin v.

St. Louis-S. F. Ry. Co., 329 Mo. 729, 46 S. W. (2d) 149; Kelley v. Illinois Central R. Co., 352 Mo. 301, 177 S. W. (2d) 435.

The judgment should be affirmed, and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.