Michael D. WILSON and Mariella Wilson, Plaintiffs-Appellants,

v.

BOB WOOD & ASSOCIATES, INC., Defendant-Respondent,

and

Lawson C. Spencer and Georgianna Spencer, Intervenors-Respondents.

No. WD 31982.

Missouri Court of Appeals, Western District.

Feb. 16, 1981.

Motion for Rehearing and/or Transfer to the Supreme Court Overruled and Denied May 4, 1982.

Application to Transfer Denied June 14, 1982.

Robert L. Shirkey & James Slone of Shirkey, Tobin & Stone, Kansas City, for plaintiffs-appellants.

William A. Lynch and James R. Keller of Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for defendant-respondent.

Darrell W. Moore, Kansas City, intervenors-respondents.

Before CLARK, P.J., and MANFORD and KENNEDY, JJ.

MANFORD, Judge.

This is an action wherein plaintiffs sought actual and punitive damages for the alleged unlawful withholding and conversion of monies. Plaintiffs appeal from the judgment entered in accord with the jury finding in favor of defendant and in favor of intervenors against plaintiffs for $450.00 actual and $600.00 punitive damages. The judgment is affirmed.

For reasons of clarity, the parties are identified. Appellants were plaintiffs at trial and will be referred to as plaintiffs. Respondents include the original defendant and intervenors. These parties will be referred to as defendant and intervenors respectively.

Plaintiffs present nine points of error, which in summary charge the trial court erred (1) by refusing to grant a severance; (2) by refusing to discharge the jury panel after requiring plaintiffs to recant one of their peremptory challenges; (3) by permitting a witness to testify in violation of the parole evidence rule; (4) by permitting a witness to testify as to custom/practice in assessment of real estate commissions because such evidence is inadmissible to vary or contradict the terms of a written contract; (5) by permitting a witness to give opinion evidence upon language in a written contract because such evidence was upon a question reserved for the court and jury; (6) by permitting a witness to identify an item as a fixture because that was an ultimate fact for jury determination; (7) by permitting a witness to testify to certain derogatory racial remarks because they were irrelevant concerning the claims between the parties; (8) by the giving of a certain instruction for plaintiff; and (9) by the giving of a certain instruction for intervenors.

The record reveals the following pertinent facts, which identify the parties, disclose their conduct and from which the jury could have reached its findings. Plaintiffs (Wilsons) owned a residence at 10905 Full-

er, Kansas City, Missouri, subject to a promissory note and deed of trust.[1] On March 10, 1975, after failing to sell their residence themselves, plaintiffs listed the home and entered into an exclusive sales agreement with defendant (Bob Wood & Associates, Inc., a local realty company). The listing offered plaintiffs' residence for $41,200.00. This agreement also contained the following term:

"4. The owner agrees to pay Realtor a fee of 7% of the purchase price when the Realtor produces a purchaser ready, willing and able to purchase said property at the price and on the terms stated, or later agreed upon, or when a sale or exchange of said property be made by the owner or any other person during the term of this exclusive right to sell."

On May 29, 1975, the Wilsons entered into a real estate purchase agreement with the intervenors (Spencers). The pertinent details of this contract were: (1) $1,000.00 paid by Spencers upon signing; (2) $7,000.00 in cash to be paid by the Spencers upon closing; (3) Sale to be an equity sale for $10,000.00; (4) Approximate balance on existing first mortgage ($27,488.95) to be assumed by the Spencers; (5) Spencers to execute note and second deed of trust for $2,000.00 to plaintiffs, payable in equal monthly installments; (6) Completion of sale/purchase contingent upon sale of prior residence of Spencers; and (7) "The following non-real estate items [to be] included in the sales price . . . all carpets and drapes."

The Wilsons and Spencers then executed a formal real estate contract on May 30, 1975, containing the above pertinent terms. The closing of this sale/purchase followed 89 days later (August 26, 1975). The Wilsons were upset over the delay, but the evidence indicates that the delay was caused by the contingency of sale of the Spencer's prior residence. In addition, the Wilsons (through cross-examination) attempted to inject the issue of time as being the essence of the contract, but the same

1. At the execution of the real estate contract between plaintiffs and intervenors, the balance of the loan was approximated at $27,488.95.

At the time of closing, the balance was declared to be $27,359.46.

was not supported by the evidence. Further, there was no challenge that the exclusive sales contract had expired.

The closing statement executed August 26, 1975 reads:[2]

"SELLERS CLOSING STATEMENT
10905 Fuller
8/26/75

| | DEBIT | CREDIT |
|---|---|---|
| Sales Price for Equity | | $10,000.00 |
| Title Insurance Policy | $ 260.00 | |
| Note & Second Deed of Trust | $ 2,000.00 | |
| September 1 payment | $ 273.83 | |
| Real Estate Commission | $ 2,615.16 | |
| Assignment of Second Deed of Trust to Bob Wood & Associates, Inc. as partial payment of Real Estate Commission | | $ 2,000.00 |
| Proceeds due Sellers | $ 6,851.01 | |
| | $12,000.00 | $12,000.00 |

We have received a copy of this closing statement and it is acceptable with us. We hereby agree to correct any error or ommissions (sic) that may be discovered.

/s/ Michael D. Wilson /s/ Mariella Wilson "

The foregoing reflects the formal dealings between the Wilsons and the Spencers. It is necessary to digress chronologically and consider evidence pertaining to events which occurred from March 10, 1975 to the present appeal. At the time of the listing, the Wilsons had a discussion with an agent of the defendant concerning what items remained with the house, but later testified that no discussion took place concerning the "built-in" kitchen stove. Defendant's agent testified that she secured information from the Wilsons and was told by them that the stove in question would remain with the house. Mrs. Spencer testified that while viewing the Wilson home in the presence of a real estate agent, Mrs. Wilson assured the agent that the stove remained with the house. The agent for defendant testified to this also.

On another point, the Wilsons testified that they advised defendant's agent they wanted $10,000.00 net for their equity, and

they understood the sales commission would be 7% of their $10,000.00, or $700.00. In addition to introducing the above-referenced documents, defendant, through one of its agents, testified that the sales commission was determined by multiplying 7% times $37,359.46, the purchase price of the Wilson residence. The agent added that he had a phone conversation with Mr. Wilson and advised Mr. Wilson his net on the equity would be around $7,120.00, less the sum of $273.00, which would be withheld to be used as a payment on the Wilson indebtedness in case the Wilsons failed to give possession by September 1, 1975. The Wilsons were upset in receiving only $6,851.01 as net for their equity at closing, but they accepted it. The $273.00 was to be forwarded to the Wilsons if they moved and gave possession by September 1, 1975.[3] The Wilsons did give possession by September 1, 1975, but prior to that date, Mr. Wilson removed the built-in kitchen stove. When the Spencers took possession and observed the missing stove, a controversy over the same ensued through defendant. Defendant's agent attempted to persuade the Wilsons to return the stove. At this point, certain derogatory racial remarks were made by Mr. Wilson. The Wilsons refused to return the stove. By letter, the Spencers notified defendant that they were making demand for the $273.00 being held by defendant. Defendant made no claim to the $273.00, and after this action was filed, defendant paid this sum into the court.

There was evidence that the stove was worth approximately $270.00. There was also evidence that the Spencers paid $450.00 for a replacement stove. Plaintiffs made demand for the $273.00 and defendant refused to forward the sum to them. This action commenced, with plaintiffs charging the unlawful withholding of the $273.00, and making request for payment of same, plus punitive damages for the conversion of

2. It should be noted that intervenors were only able to place down the total of $8,000.00. In addition, they offered plaintiffs their promissory note/second deed for $2,000.00. This note was later assigned to defendant by plaintiffs.

3. It is observed that the payment of $6,851.01, plus $273.00 (rounded off) totals $7,124.01, or four dollars within the amount plaintiffs were advised would be their net on their equity.

these monies. Plaintiffs further alleged that the sales commission was only $700.00 (7% of plaintiffs' $10,000.00 equity) and that defendant withheld the sum of $1,915.16 as actual damages, plus punitive damages for the wrongful withholding of this sum of money. Defendant filed its responsive pleading. Intervenors petitioned and were allowed to intervene as parties plaintiff. Intervenors presented their claim against plaintiffs, seeking actual and punitive damages. Following a lengthy trial of the issues, the jury found for defendant and intervenors and against plaintiffs. This appeal followed.

■ In their first point of error, plaintiffs argue that the trial court erred in refusing to sever the claims of plaintiffs and intervenors. Severance is a matter within the sound discretion of the trial court and will not be disturbed unless there is a showing of an abuse thereof. *Shell v. Shell*, 605 S.W.2d 185 (Mo.App.1980); *Landau v. Fred Schmitt Contracting Co.*, 237 Mo.App. 908, 179 S.W.2d 138 (1944); Rules 66.01(b) and 66.02. Plaintiffs accept this principle, but charge that the trial court abused its discretion. Their contention is that there is no common question of law or fact. They argue that their claims were twofold.

■ The first involved a question of whether defendant lawfully withheld the $273.00 since plaintiffs had given possession by September 1, 1975. The second question was whether defendant's sale commission was based on plaintiffs' equity (7% of $10,-000.00 or $700.00) or whether the commission was based upon the total of $10,000.00 equity plus the assumption of the $27,359.46 deed of trust (7% of $37,359.46 equals $2,615.16). Plaintiffs proceed to define intervenors' claims against them as claims for punitive damages based upon malice and ill will, whether the stove removed from the house was a fixture and whether, either by written contract or oral agreement, intervenors were entitled to the stove, or whether plaintiffs' removal was wrongful and attended by malice and ill will. Aside from the principle of discretion, plaintiffs' argument is unpersuasive because the evidence does reveal the existence of a common question of law and fact.

Both plaintiffs and intervenors claimed the $273.00 held by defendant. Plaintiffs contended that they were entitled to the money because they gave possession by September 1, 1975. Intervenors premised their claim to the $273.00 upon plaintiffs' failure to give proper possession by September 1, 1975 because that possession did not include the stove. In addition, plaintiffs sought punitive damages against defendant, and intervenors sought punitive damages against plaintiffs. The latter claim by intervenors was based on alleged derogatory racial remarks made by plaintiff (Mr. Wilson) concerning why he would not return the stove when asked to do so by defendant's agent. Plaintiffs further argue that the status of the stove as a fixture was another basis for intervenors' claim and as a result, it was not related to their claims. Whether the stove was ever determined to be a fixture or not is not dispositive of the question of severance. The fact remains that the stove was an obvious and indispensible feature of the conflicting claims between plaintiffs and intervenors over the $273.00. There was a common question of law and fact. Plaintiffs argue that by denying severance, they were prejudiced and denied a fair trial. This prejudice, it is argued, stems from the admittance of derogatory racial remarks against intervenors (attributed to plaintiff Mr. Wilson) into evidence. Plaintiffs elect to charge that this was tantamount to preventing plaintiffs a fair trial.

This court does not reach the same conclusion as that offered by plaintiffs. The evidence could be observed, as it was obviously viewed by the trial judge, as some evidence of why the stove was removed in lieu of or additional to plaintiffs' claim of a right to remove it. The trial court did not, under the facts and circumstances of the instant case, abuse its discretion in denying plaintiffs' motion to sever. Point (1) is found to be without merit and is ruled against plaintiffs.

In point (2), plaintiffs argue that the trial court erred by refusing to discharge the jury panel after they were required to "recant" one of their peremptory challenges.

Following voir dire, a disagreement ensued between the parties concerning the peremptory strikes. Section 494.200, RSMo 1978 provides:

"494.200. Number of challenges in civil cases allowed peremptorily.—In trials of civil causes each party shall be entitled to challenge, peremptorily, three jurors; *but when there are several plaintiffs and defendants they shall join in their challenges,* and the plaintiff shall, in all cases, announce his challenges first." (emphasis added)

Intervenors were permitted to intervene as party plaintiffs. At a *pretrial conference* with the trial court *and on the record,* plaintiffs argued that they were entitled to three peremptory challenges under the statute. Defendant countered, saying that it was entitled to three under the statute and that plaintiffs and intervenors should be required to apportion the remaining three challenges between them. The trial judge listened to the contrasting views and ruled that the six peremptory challenges should be divided equally among the three parties, thus affording each two peremptory challenges. The interesting feature in this case is the role of intervenors who, while designated party plaintiffs, *in reality maintained interests apart from either the plaintiffs or the defendant.* Thus, the question in applying § 494.200 is: With whom should intervenors be aligned? The trial judge struck a compromise.

■ The issue which this court must resolve is whether the trial court acted with authority and/or whether its actions resulted in prejudice and hence denied a fair trial to any of the parties. Section 494.200 provides no answer, thus the question is: Did the trial court, in absence of statutory directive, act within its authority to apportion the challenges equally? This court is forced to conclude that the trial court possessed no such authority. The remaining question becomes: In so doing, were any of the parties

prejudiced thereby? Plaintiffs contend that they were, not only because the statute grants to a party plaintiff three such challenges, but because they were forced to "recant" one of their challenges.

It has already been observed that the statute fails to fit the particular circumstances herein. In addition, while plaintiffs' counsel, with vigor and determination, argued that plaintiffs would be prejudiced if they had to "give up" one of their juror strikes, there is a failure of showing how that resulted in prejudice. Obviously, this entire controversy was conducted out of the presence of the jury, so it cannot be claimed that any remaining juror was influenced. The jury verdict was unanimous, which tends to dispel any claim of bias or prejudice. Further, the alternative suggested by plaintiffs would have resulted in an unfair advantage to either plaintiffs or defendant. Thus, had the trial court decided, as it was required to do under the statute, that intervenors were party plaintiffs within the statute, plaintiffs would be forced to share their challenges with intervenors and the defendant would have gained the advantage of three challenges. If plaintiffs and intervenors had failed or refused to agree on the three challenges granted to them, the trial court could have called the first 12 jurors. *White v. Teague,* 353 Mo. 247, 182 S.W.2d 288, 291 (1944). The trial court did what it thought to be the next best thing under the circumstances and struck a compromise of two challenges for each party. While this action was inherently reasonable and fair, and there may be cause to argue that trial courts should have discretion to handle such problems in a practical sense, no authority exists permitting the trial court to do so. The right to peremptory challenges is purely statutory and § 494.200 makes no provision for the action taken by the court below. It has been determined that "[w]here there are several plaintiffs or defendants, *they must join even though their interests may be adverse to each other.*" (emphasis added) *Ward v. National Bank and Trust Company of Kansas City,* 379 S.W.2d 614, 617 (Mo.1964). It should be

noted that while *Ward* does not address the precise question presented herein, it does contain the foregoing language which intimates that when third parties are included within the litigation, they shall be joined with their party-counterparts for purposes of exercising peremptory challenges under the statute. In reality, the failure lies in the wording of the statute to properly address particular cases such as presented here. The result of the trial court's action was error, there having been no statutory authority to apportion the peremptory challenges as was done. Nonetheless, under the particular facts and circumstances and in order for plaintiff to prevail on this point, there must be a showing of prejudice to the plaintiff. The error committed by the trial court was harmless since nothing can be found in the record which supports or even suggests that there was any prejudice or bias by any juror selected. This factor was noted by our state Supreme Court when dealing with an alleged jury irregularity in *Kidd v. Chicago R.I. & P. Ry. Co.*, 310 Mo. 1, 274 S.W. 1079 (1925), *cert. denied*, 269 U.S. 582, 46 S.Ct. 119, 70 L.Ed. 424 (1925). In *Kidd*, the court was, of course, addressing the main issue of whether there was a showing of prejudice, bias or injustice and in the absence thereof, whether a verdict should be upheld. In the instant case, plaintiffs cannot claim prejudice because they in fact secured, as a result of the trial court's action, an equal number of peremptory challenges with the other parties. Under the rule of *White* and *Ward*, had the trial court acted in line with those decisions, the plaintiff would have had to share three peremptory challenges with the intervenors, and in absence of an agreement, the court would have been empowered to select the first 12 jurors. There is no merit to plaintiffs' point 2 and it is ruled against them.

In point (3), plaintiffs charge that the trial court erred in permitting a witness to testify in violation of the parole evidence rule. The challenged testimony was that of defendant's agent, the particular portion of which reads as follows:

"Q. Now, did you discuss also with the Wilsons before they signed this listing agreement how the sales commission was computed?

A. Yes.

Q. Tell us what you discussed with them.

A. The fact that, well, that came in with what they would net from their home, that my cut in commission is seven percent of the total sales price.

Q. That's what you told them before they signed the listing agreement?

A. Well certainly.

Q. And what did you explain to them what you meant by the total sales price?

A. If he sold it at $41,200.00 or if he sold it at $35,000.00, he would owe us seven percent of whatever the home sold for.

Q. What about how much equity he's got? Is the sales commission based on just what the equity is in that house?

A. No.

Q. Why not?

MR. SHIRKEY: Excuse me. Your Honor, I would object for the reason heretofore stated. It's an attempt to vary the written terms of a contract solemnly made by the Woods herein for these people to sign, and I would object to parole evidence to militate against the written evidence of $10,000.00.

THE COURT: Overruled. You may answer."

As can be observed, plaintiffs' objection was untimely and provides nothing for review. *Pickett v. Stockard*, 605 S.W.2d 196, 199 (Mo.App.1980) and *Brown v. Parker*, 375 S.W.2d 594 (Mo.App.1964). The untimeliness of the objection aside, there exists additional reasons why the trial court's ruling on this point was proper. The issue of what "purchase price" meant was first addressed by plaintiffs' evidence. This evidence, as observed below, was admitted without objection:

"Q. All right, sir. And with regard to that specific document, did you understand what the commission would be, that is the realtor's fee, what percentage you would pay of the purchase price?

A. I understood I was selling—I wanted to sell it on an assumption that I was selling my equity into the house.

Q. All right, and what did you agree to pay with regard to the sale of your equity within the house?

A. I figured it was seven percent of the equity.

Q. Just like—

A. On the commission.

Q. —what it says right here in this agreement?

A. Yes.

MR. SHIRKEY: I would like to offer on behalf of the defendant, join in offering Exhibit Number 1 on behalf of the defendant, Wood.

MR. LYNCH: No objection, Your Honor.

THE COURT: It will be received. * *

Q. Well, let's go over the terms of this particular short form real estate contract. It states down here in the full paragraph, 'This is an equity sale in the exact amount of $10,000.00 over and above the principal balance due on the present first loan,' true?

A. Yes, sir.

Q. Okay, it says the sales price shall be adjusted at the closing to reflect this?

A. Yes, sir.

Q. Further reads, 'Buyer agrees to assume and pay an existing first loan now of record provided that it is in the approximate amount of $27,488.95,' correct?

A. That's correct.

Q. All right, so the offer to you for the purchase of your house consisted of an offer of $10,000.00 for equity and assuming the outstanding balance of the mortgage, which was approximately $27,488.95, is that correct?

A. They were going to pay me $10,-000.00 and take over my payments, yes.

Q. All right, and they were going to take over your payments on the mortgage that had an outstanding balance of approximately $27,488.95, true?

A. That's what I consider assuming the loan is, yes."

Plaintiffs would urge to this court their entitlement to offer evidence of what "purchase price" meant to them (i.e., their equity) and then conclude that defendant was precluded from introducing evidence upon the same point. This brings into play a long recognized rule in our law that a party cannot validly complain of the introduction of evidence when evidence of a like nature was introduced without objection. *Dunn v. St. Louis-San Francisco Ry. Co.*, 621 S.W.2d 245, 252 (Mo.banc 1981) and *Baker v. Woodbury*, 492 S.W.2d 157 (Mo.App.1973).

There is yet another factor to consider concerning the particular facts and circumstances of the instant case. From the outset of this case including this appeal, it is obvious that plaintiffs and defendant have different positions relative to what constituted the "purchase price" of this property. The parties do not disagree that the commission was to be 7% of the *purchase price*, but plaintiffs contend that the "purchase price" was their equity or $10,000.00, while defendant took the position that the 7% was applicable to the total sum of $37,359.46 ($10,000.00 equity plus balance of first or existing lien). The documents in evidence do not set forth in any one place the "purchase price" to which the 7% was to be applied. Plaintiffs contend that the listing agreement, plus the sales contracts, list the "purchase price" as their equity of $10,-000.00. This court, in review of these documents, does not agree with plaintiffs' contention. The result and the very same result facing the trial court was the dispute between the parties as to what they intended the "purchase price" to be. Defendant argues the absence, within the documents in evidence, of a declaration of the sum to which the 7% commission was to be applied, coupled with the term, "The purchase price for equity is TEN THOUSAND AND NO/100 DOLLARS", and language within the documents constituting an assumption of the first lien by the Spencers (intervenors) renders the documents, at least as it concerns the term "purchase price", ambig-

uous. Defendant cites authority which is found to be persuasive, *Schulte v. Crites,* 300 S.W.2d 819, 822 (Mo.App.1957), wherein the parties (like the instant case) entered into a brokerage agreement which provided for a 5% commission of the *sale* price. In addressing the situation, the court declared, "The term 'sale' has no fixed or invariable meaning *but is to be interpreted in accordance with the manifest intention of the parties.*" (emphasis added) *See also, Guild Management Co. v. Oxenhandler,* 541 S.W.2d 687, 691 (Mo.App.1976).

■ Although plaintiffs strenuously contend that the admission of such defense evidence violated the parole evidence rule, that contention cannot stand in light of the particular facts and circumstances of the instant case. The parole evidence rule does not and is not designed to prohibit introduction of parole evidence to clarify an ambiguity or to describe the intentions of the parties. *Modine Manufacturing Co. v. Carlock,* 510 S.W.2d 462 (Mo.1974); *Fisher v. Miceli,* 291 S.W.2d 845 (Mo.1956) and *Harris v. Union Electric Co.,* 622 S.W.2d 239, 247 (Mo.App.1981). From a reading of the documents in evidence, it becomes obvious that the term "purchase price" was ambiguous. This ambiguity was further manifested by the different intent ascribed to the term by the parties. The ruling by the trial court was not error. Point (3) is found to be without merit and is ruled against plaintiffs.

In their point (4), plaintiffs contend that the court erred when it permitted a witness for defendant to testify to the custom and practice surrounding the computation of sales commissions, because such testimony violated the rule that custom/practice cannot be shown to vary or contradict the terms of a written agreement. The particular testimony which plaintiffs attack is as follows:

"Q. Now, the way you've—you've written up a number of these short form contracts, have you not?

A. Yes, I have.

Q. And you've also sold a number of homes or have been involved in the sale of a number of homes where the buyer is assuming the loan of the sellers, have you not?

A. That's right.

Q. Now, have you seen other short form contracts prepared by other real estate agents on sales where they're assuming the loan, where the buyer is assuming the loan of the seller?

MR. SHIRKEY: Excuse me, before you answer that. Your Honor, I would object to that as what he may have seen otherwise. Custom and practice has nothing to do with the issues in here, and there's nothing been pled and I would object to any comment about that. It would be hearsay.

THE COURT: Overruled."

If the foregoing excerpt had been the only testimony on this point, plaintiffs' argument would stand upon solid ground. However, the foregoing testimony was preceded by testimony of the same witness:

"Q. Okay, and what is that purchase price that was being offered by the Spencers and accepted by the Wilsons?

A. It would be $37,488.00, in the approximate amount of that."

■ This testimony again brought into focus the different construction placed on "purchase price" by the parties. Plaintiffs' objection went to testimony that the contracts in the instant case were prepared in a standard manner which depicted the Spencers (intervenors) agreeing to pay a sum of $10,000.00 to plaintiffs, plus assuming the obligation on the first lien of $27,359.46. Again, there is a difference as to what the parties intended regarding the term "purchase price". Custom/practice is admissible to show and describe the intention of the parties. *State v. Nangle,* 405 S.W.2d 501 (Mo.App.1966) and *Liberty Storage Co. v. Kansas City Terminal Warehouse Co.,* 340 S.W.2d 189 (Mo.App.1960). Under the facts and circumstances of the instant case, including the court's consideration of the contract subject matter and the relationship of the parties, it was not error for the trial

court to have admitted the foregoing testimony which went not to the variance or contradiction of a written agreement; but described the intent of the parties and defendant's and intervenors' intent toward the "purchase price" as consistent with custom and practice in such transactions. There was no error in the trial court's denial of plaintiffs' objection since the testimony admitted did not vary or contradict the terms of the contract. Point (4) is found to be without merit and is ruled against plaintiffs.

Within their point (5), plaintiffs charged trial court error in permitting defendant's agent to testify "as to what was in his mind at the time the Missouri Real Estate Sales Contract was signed concerning the stove". This particular issue arose during and by virtue of testimony given by one of defendant's agents during cross-examination by intervenors. That particular testimony was:

"Q. [By Mr. Moore] Just ask you one last question. At the time that this long form, Exhibit Number 4, was signed, in your mind did it include the built-in stove?

MR. SHIRKEY: Excuse me, before you answer that, I would object, Your Honor, to this conclusion as to what is in his mind. He is not a party to this action, has nothing to do with it whatsoever. It's asking for a conclusion on the part of the witness what may be in his mind. It's beyond any realm of any cross-examination I could possible undertake.

THE COURT: Overruled.

Q. [By Mr. Moore] You may answer the question. * * *

A. [By the Witness] Yes, it did."

Plaintiffs position their argument upon the failure of the written contract to specifically list the stove as an item to be included within the transfer of the dwelling and whether the stove was a part of the realty. Plaintiffs contend that since the contract was before the court, the admission of the foregoing testimony was opinion evidence concerning the legal "import of certain language in that contract, a question reserved for the court and the jury."

The record is clear in that prior to the above question, ruling and answer, evidence had been introduced and had established that the stove in question was "built in" to the cabinet work of the kitchen. There was evidence that Mr. Wilson removed it. There was also evidence that defendant's agents had discussed the return of the stove by Mr. Wilson and that he refused. In addition, by way of a previous defense witness, this same inquiry had been made and response given without objection. The record discloses:

"Q. What did you do?

A. We went back to the house, we got his contract out, and since it was so—I really—I did not see the stove listed in there.

Q. All right.

A. So I called my broker and I asked him about Mike's stove. He said, 'Is it built-in or is it free standing?' I said, 'It's built-in.' He said, 'It's a part of the house.'

Q. So what did you tell the Wilsons?

A. They were sitting there when I called him.

Q. What did you say to them?

A. That it was a built-in appliance.

Q. Could they take it or couldn't they?

A. As far as I was concerned, no.

Q. Is that what you told them? A. Right.

Q. Did they object? Was there any further discussion or argument on their part?

A. Not at that point."

It must be observed that the challenged testimony of defendant's agent which gave rise to this point arose subsequent to evidence which directly bore upon the "status" of the stove. This particular testimony did not, as charged by plaintiffs, bear exclusively upon the "legal import" of language within a written contract. There was no error in the overruling of plaintiffs' objection or in the admission of this testimony and point (5) is ruled against plaintiffs.

In order to avoid repetition, this court has reserved the following comment concerning plaintiffs' points (3), (4), and (5) because the following interrelates to all three points and is, in addition to the reasons set forth above, further reason to rule points (3), (4), and (5) against plaintiffs.

It must be kept in mind that plaintiffs' claims against defendants were for the unlawful withholding and conversion of monies ($273.00), including a claim for punitive damages attending thereto and a claim for the unlawful and wrongful withholding of monies ($1,915.16), also with an attending claim for punitive damages. Stated another way, plaintiffs charged defendant with the unlawful withholding and conversion of monies they claimed were due them from defendant. In addition to the varied reasons given in disposition of points (3), (4), and (5), the particular evidence challenged therein was admissible as it bore on the charge of unlawful and wrongful conduct of the defendant. The defendant certainly possessed the right to present evidence as to why these monies were "withheld". This evidence was relevant regarding the intent or motive possessed by defendant to determine whether such "withholding" was wrongful as charged by plaintiffs. The jury was entitled to hear evidence on this question for proper determination of the claims for punitive damages sought by plaintiffs.

█ In point (6), plaintiffs charge that the trial court erred in permitting a witness for defendant and one of the intervenors to testify that the stove in question was a fixture and thus included within the sales contract, because such testimony permitted opinion evidence upon an ultimate fact that should have been determined by the jury from other facts admitted into evidence. It must be kept in mind that before the challenged testimony (under this point) was offered, there existed evidence that the stove was a fixture. This evidence was admitted without objection. The question under this point is not whether the admission of this evidence was proper or improper, but whether its admission prejudiced plaintiffs.

The record in this case is replete with evidence of the location, construction and "status" of the stove. Plaintiffs complained that at a late stage of the trial proceedings, the ruling of the trial court in permitting further testimony upon this question prejudiced their claims. This evidence, over plaintiffs' objection, included testimony by an expert appraiser that a built-in stove is considered a fixture. It should also be kept in mind that under points (3), (4), and (5), plaintiffs charged defendant with the unlawful and wrongful withholding and conversion of the $273.00.

The evidence surrounding the status of the stove was relevant to the question of defendant's interest or motive in withholding the $273.00. In other words, if defendant believed it was entitled to withhold that sum on the understanding that the built-in stove was a fixture, it certainly was entitled to evidence which bore on that question. Because of this latter factor, coupled with additional evidence upon the record to which there was no objection which would, standing alone, support a finding by the trier of fact that the stove was a fixture, it cannot be concluded that plaintiffs were prejudiced.

If these proceedings had been upon the contract exclusively and had not included plaintiffs' claim of unlawful and wrongful conduct, it would have been error for the trial court to have admitted such evidence. That error, in light of other existing evidence admitted without objection, would have been harmless. The instant case contains this element of wrongful and unlawful conduct, and certainly the "status" of the stove bore direct relation to the intent and conduct of the defendant. Point (6) has no merit and is ruled against plaintiffs.

In point (7), plaintiffs charge that the trial court erred by permitting one of defendant's witnesses to testify that Mr. Wilson made certain derogatory racial remarks about intervenors and that this evidence was irrelevant to both plaintiffs' and intervenors' claims.

█ In arguing this point, plaintiffs have overlooked the fact that one of the

issues in these proceedings was the claim by intervenors against plaintiffs of the latter's "wrongful conduct" and that such conduct was "willful, wanton and malicious". Intervenors' claim sought actual and punitive damages. This claim, of course, arose from the removal of the stove. Contrary to plaintiffs' contention, this evidence was relevant regarding intervenors' claim against plaintiffs because it bore on the issue of whether plaintiffs' removal of the stove was achieved under a belief by plaintiffs that they had the right to remove the stove, or, as contended by intervenors, if the removal was achieved out of malice or wantonness by plaintiffs against intervenors. Point (7) is found to be without merit and is ruled against plaintiffs.

Plaintiffs' point (8) charges the trial court with error in submitting an instruction for plaintiffs. The following instruction was submitted by the court over the objection of plaintiffs and reads as follows:

#### "INSTRUCTION NO. 4

Your verdict must be for plaintiffs Wilsons against defendant Bob Wood & Associates, Inc., upon Count II of their petition, if you believe:

First, the purchase price for plaintiff's residence was $10,000, and

Second, the real estate commission earned by Bob Wood & Associates, Inc. was $700, and

Third, Bob Wood & Associates, Inc., wrongfully withheld $1,915.16 from the sum so paid them by the Spencers as part of the purchase price of the Wilsons' residence that belonged to plaintiffs Wilsons, and

Fourth, that defendant Bob Wood & Associates, Inc. intentionally and knowingly appropriated the $1,915.16 to its own use in opposition to the rights of and without authority from the plaintiffs Wilsons."

Plaintiffs' challenge to the above instruction centers on the first paragraph. Plaintiffs contend that the language is misleading and argue that their claim and the evidence was to the effect that $10,000.00

was the purchase price of their equity, not the purchase price for the property, and the sum upon which the 7% sales commission should be applied. The submitted instruction was not an approved MAI instruction, so no error is presumed and Rule 70.02(b) need not be considered. One major issue throughout this entire proceeding was plaintiffs' contention that they owed defendant $700.00 as a sales commission, based upon 7% of their equity of $10,000.00. This was opposed by defendant who contended that the fee was $2,615.16 (7% of $37,359.46). In cases such as this where a challenged instruction is not subject to the requirements of MAI, our courts have adopted guidelines designed to resolve disputes over such instructions. In the first instance, the party challenging the instruction bears the burden of proving that the instruction prejudiced him. Such instructions need not affirmatively require a jury to find essential facts which are not in dispute. Such instructions should be brief, simple, impartial, nonargumentative and nonmisleading to a jury. *Huff v. Union Electric Co.*, 598 S.W.2d 503, 516 (Mo.App. 1980), *Cline v. Carthage Crushed Limestone Company*, 504 S.W.2d 102, 112 (Mo.1973). Plaintiffs offered an alternative instruction, the first paragraph which read, "First, the purchase price for plaintiffs' equity in their residence was $10,000.00 and . . ."

This offered language did nothing but submit an issue not in dispute. Defendant never challenged plaintiffs' claim that the purchase price of plaintiffs' equity was $10,000.00, but rather, the parties were at odds as to which dollar figure the 7% sales commission applied.

Clearly, the jury, by the end of this rather lengthy trial, was quite aware of the issues. The submitted instruction met the standard set forth in *Huff* and *Cline.* There has been no showing by plaintiffs that their cause was prejudiced by the instruction. The trial court properly rejected plaintiffs' offered instruction, for the inclusion of the first paragraph set forth nothing more than an uncontested fact and its inclusion would have been equivalent to a "mis-

direction", *Huff, supra,* in this case where damages were sought for the unlawful withholding and conversion of monies. There is no merit to plaintiffs' point (8) and the same is ruled against them.

In their final point (9), plaintiffs challenge an instruction submitted on behalf of intervenors. They argue that the first, second, and third paragraphs of the instruction refer to the stove as built-in, thereby placing improper emphasis on the disputed evidence that the stove was built-in, and as a result, solicited the jury's finding that the stove was a fixture. The thrust of plaintiffs' argument that the instruction refers to the stove as "built-in" eliminated the jury's obligation to determine that the stove was a fixture. The disputed paragraphs read:

"First, the sale of plaintiffs Wilsons house to intervenors Spencers included a fixture consisting of a built-in stove, and

Second, plaintiffs Wilsons after selling their house to intervenors Spencers removed the built-in stove, and

Third, plaintiffs Wilsons taking of said built-in stove was without intervenors Spencers permission or consent, and . . ."

 Plaintiffs' contention fails for the following reasons. In the first instance, the record is replete with testimony wherein the stove is referred to as "built-in" and such evidence was admitted without objection. Plaintiffs' own evidence describes the stove in such a manner as to distinguish it from a "free-standing" type stove, it being within a recessed cabinet area. Much detail surrounding the connection arrangement, the cabinet work and removal is found within the testimony. In addition, the court submitted an instruction setting forth the definition of "fixture". The jury was, in fact, left the task of finally determining whether the stove was a fixture. This is clear from the fact that the definitional instruction on the term fixture advised the jury that the critical element was whether the stove was, in fact, attached to the dwelling and what the intent was of the party making the attachment. The determination of the stove's status did not turn upon the fact that it was "built in", and the court's definitional instruction clearly and concisely set this forth. The criteria in determining whether an instruction is correct or fails is whether an average juror would correctly understand the applicable rule of law, and whether a jury was not or could not be confused or misled, resulting in prejudice to one of the parties. *Beck v. Modern American Life Insurance Co.,* 589 S.W.2d 98 (Mo.App.1979). It cannot be said that under the evidence and *all* the court's instructions that the challenged instruction misdirected, misled or confused the jury. Before reversible error is declared in such instances, this must be shown and the burden of proof rests upon the party challenging the instruction. See *Goodwin v. S. J. Groves & Sons Co.,* 525 S.W.2d 577 (Mo. App.1975). See also *Hawkins v. Great Central Insurance Co.,* 509 S.W.2d 477 (Mo.App. 1974) and *Rieke v. Brodof,* 501 S.W.2d 66 (Mo.App.1973) for the rule that instructions need not be perfect, but as applied to the particular facts and circumstances of any given case, they are substantially correct. This instruction, like that under point (8) above, is not within MAI and the applicable rules discussed within (8) above apply. It is correct that our courts have often offered criticism of repeated undue emphasis of a given issue in a given case. That fact standing alone usually does not constitute reversible error. *Lankford v. Thompson,* 354 Mo. 220, 189 S.W.2d 217 (1945). Rather, the whole of the evidence and all the instructions must be viewed in light of the facts and circumstances of any given case for the express purpose of determining whether a party has been prejudiced. Plaintiffs bore the burden of proof to establish how they were prejudiced by this instruction. They have failed to do so and point (9), being found to be without merit, is ruled against them.

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.